CHARLES E. BAKER *vs.* WM. BAKER, JR., ET AL.

*Mistake of Law—Property Voluntarily Transferred to a · Claimant Thereof Under a Mistake of Law Common to Both Parties Cannot be Recovered Back—Admissions as to Advancement Made in Equity Case by a Distributee of the Estate—Estoppel.*

When a party pays money or transfers property under a claim of right thereto made by another, with knowledge of the facts, but under a mistake of law, the money or property so paid or delivered cannot be recovered back, although the mistake was mutual and the claim made was not legally enforceable.

A testator directed that the residue of his estate, including advances made to his children, should be distributed equally among them. Appellant, one of testator's sons, was charged on the books of the testator with $35,000 including shares of stock in a certain corporation valued by the testator at $5,000 and stated on his books to be a loan. The executor of the estate claimed that these shares of stock belonged to the estate. At that time both the executor and the appellant were of the opinion that the charges on the testator's books against his children were debts due by them, but it was subsequently adjudicated in equity that according to the true intent of the will they were to be put on the footing of advancements, although not technically such. Before this decision was made appellant had transferred the shares of stock to the executor and the charge against him was then reduced from $35,000 to $30,000, and he had admitted in an answer in the equity case that the shares were held by the executor for general distribution. The amount distributable to each child was about $30,000, and in this case the appellant now claims that said shares of stock do not belong to the estate, but were advanced by the testator to him, the effect of which claim would be to increase the share of the estate distributable to him. The evidence showed that the stock was originally transferred to the appellant to enable him to become a director in the company. *Held,* that the appellant cannot now annul his transfer of the shares to the executor and repudiate his admissions that they belonged to the testator's estate, although when that was done he erroneously thought that the advances referred to in the will were debts due by him ; that this was a mistake of law from which he cannot be relieved, and that moreover the shares were never given to him absolutely.

Appeal from an order of the Circuit Court of Baltimore City (Ritchie, J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd and Pearce, JJ.

*George Whitelock* and *R. E. Lee Marshall,* for the appellant.

*Frank Gosnell,* (with whom was *T. M. Lanahan* on the brief), for the appellees.

McSherry, C. J., delivered the opinion of the Court.

This case has been here twice before. The first appeal is reported in *91 Md. 297;* the second in *93 Md. 368.* On the second appeal auditor's accounts A and B, were under consideration. By those accounts the estate of Charles J. Baker, deceased, was distributed amongst his children; and the questions presented for decision arose on exceptions filed to the ratification of the audits. In the will of Charles J. Baker it was provided that the *residuum* of his estate, including therein all "advances" made by the testator to any of his children, should be distributed equally amongst his eight children. He had a ledger and a balance sheet upon which the various items loaned or charged to five of his children were entered. Charles E. Baker, one of the testator's sons and now the appellant on this record, was charged with an aggregate of thirty-five thousand dollars, composed of ten thousand dollars cash loaned; two hundred shares of the capital stock of the Equitable National Bank, valued at twenty thousand dollars, which had been loaned upon the pledge of certain collaterals; and two shares of the Baltimore Car Wheel Company's capital stock valued by the testator at five thousand dollars. The entry in the ledger concerning the two shares of Car Wheel Company's stock is in these words: "To cash for two shares B. C. W. Co. stock $5,000;" and the entry on the balance sheet, respecting the same shares, is "C. E. Baker, loan Baltimore Car Wheel Co. $5.000." In none of the litigation has it ever been doubted that the items of ten thousand dollars

for cash loaned and of twenty thousand dollars for the Equitable Bank stock were properly charged to Charles E. Baker, and the whole contention now is over the two shares of Car Wheel Company's stock and certain dividends thereon. The learned Judge who decided this case in the Circuit Court has so tersely stated the salient facts which are necessary to be understood in the pending controversy, that we now read from his opinion the following extracts: "After the death of the testator several questions arose as to the *status* of the charges that had been made by him on his books against the said five children, the meaning of 'advances,' &c., and involving among other things the title to these two shares. Charles E. Baker claimed that this stock belonged to him under the will of his father; on the other hand the executor disputed this claim, and insisted that if he retained the stock he would be liable to the estate for the amount charged against him for it by his father, that is, $5,000, which was then largely in excess of its value; and Charles E. Baker testifies that ' rather than pay that much for it' he had surrendered it. On its surrender the executor reduced the charges against him from $35,000 to $30,000. After this the executor filed a bill asking (the Circuit Court) to take jurisdiction of the further administration of the estate. It is alleged in this bill that among the remaining assets of the estate were fifteen shares of the car wheel stock (this included the two shares surrendered) and that the advances made to Charles E. Baker amounted to $30,000 (this excluded the $5,000 for the two shares.) The case on this bill went to the Court of Appeals on demurrer and it was there decided that this Court (the Circuit Court) should take jurisdiction as prayed. Charles E. Baker then filed his answer to the bill, and in it he admits that the whole fifteen shares were included in the assets and 'admits' specifically that the sum of thirty thousand dollars * * * * is the true and correct amount of the 'advances' made to him by his father. The admission that this reduced amount of thirty thousand dollars arrived at by striking off the five thousand dollars charged for this stock, was the correct

amount of his advances necessarily involved the admission that these two shares were not included in the advances made to him and were not then claimed by him, but were held by the executor for general distribution.'' In auditor's accounts A and B, which were before this Court on the appeal reported in *93 Md. 368*, *fifteen* shares of the Car Wheel Company's stock, which number included the *two* shares charged as heretofore stated to Charles E. Baker, but which were subsequently surrendered by him to the executor, were treated as assets of the testator's estate and were distributed as such ; and the amount of advances to Charles E. Baker was put at thirty thousand dollars—the precise sum shown by the testator's ledger and balance sheet after deducting the five thousand dollars charged for the two shares of car wheel stock surrendered to the executor. Numerous exceptions were filed to the ratification of these accounts, but they need not be stated. In none of them, however, was it intimated or suggested that only *thirteen* shares of the Car Wheel Company's stock should have been distributed, or that the amount of Charles E. Baker's advances should have been stated at thirty-five thousand instead of thirty thousand dollars. Much of the controversy had relation to the nature and legal character of the ''advances'' alluded to in the will, and that branch of the litigation came finally to the question as to whether the sums so advanced were to be treated as *debts* due by the several children named in the ledger and the balance sheet, or whether those sums were to be put on the footing of *advancements*, though not technically such. It was held in furtherance of the testator's obvious intention that those ''advances'' were not debts due by the children but were to be treated and dealt with as though they had been technical advancements. Auditor's accounts A and B were rejected because, among other reasons, they had not been stated in accordance with that theory, but not because there was any error in distributing fifteen shares instead of thirteen shares of the Car Wheel Company's stock, or in placing the amount of Charles E. Baker's advances at thirty instead of thirty-five thousand dol-

lars; and the cause was remanded to the end that a new account might be stated.   After the record reached the Circuit Court under the remanding order, a new account designated account C was reported in accordance with the views expressed in the judgment of this Court, and in account C the fifteen shares of car wheel stock were again treated as assets of the testator's estate and the amount of Charles E. Baker's advances was again placed at thirty thousand dollars.   Thereupon Charles E. Baker procured the statement of auditor's account D, wherein but *thirteen* shares of the car wheel stock are dealt with as assets of the estate, and wherein the amount of his advances is put at thirty-five thousand dollars.   Exceptions were filed to each of these accounts.   Testimony was taken before the auditor and it was proved by a witness who has not been contradicted, that the two shares of the Car Wheel Company's stock with which Charles E. Baker was charged and which he subsequently surrendered to the executor and received a credit for, but now asserts title to, were transferred to him by his father merely to enable him to become a director in the Car Wheel Company to represent his father's interests therein.   The same witness further testified: "After my father's death my brother, Charles E. Baker, stated to me that the two shares of Baltimore Car Wheel Company stock was loaned to him by father to qualify him as a director, and that he proposed turning over the same to the Safe Deposit and Trust Company for the estate, as they did not belong to him."   As already stated he did subsequently deliver the certificate to the executor.   The exceptions to account D were sustained, whilst those to account C were overruled, and Charles E. Baker appealed.

The single question is:   Under the circumstances above narrated can Charles E. Baker now successfully assert that those two shares of Car Wheel Company's stock belong to him and not to the estate of his father?   If he can, then whilst his brothers and his sister receive, including advances, $30,751.84 each, *he* has received in advances the sum of $35,000.00.   If he sustains the claim he now makes he must

repudiate the admission made to his brother to the effect that the two shares did not belong to him ; and besides all this, he must recant the specific admission made by him in his answer to the effect that the amount with which he was properly chargeable as " advances " was thirty thousand and not thirty-five thousand dollars ; because the sum of thirty thousand dollars was reached only by deducting the five thousand dollars charged for those two shares, and had he retained those shares and had he not surrendered them to the executor, the total of his advances would have been thirty-five thousand dollars—a sum he distinctly denied to be accurate.

It is true that at the time Charles E. Baker surrendered these two shares to the executor the *status* of the " advances " was in dispute and in doubt.    If the " advances "—computing Charles E. Baker's at thirty-five thousand dollars and, therefore, as including the value of the two shares of Car Wheel Company's stock—had been decided to be *debts* according to the contention of some of the litigants, Charles E. Baker would have been liable to the estate in a sum considerably larger than the share which he would have received, and that excess he would have been required to pay over to the executor.    If, on the other hand, the " advances " were to be put on the footing of technical *advancements*, then no such liability would exist ; and whilst he would receive nothing more from the estate than he had already received in advances, he would still have received in advances a larger sum than any of the other residuary legatees.    With these alternatives before him and being uncertain as to whether the advances would ultimately be held to be debts or tantamount to advancements, and with a distinct view of escaping the liability which would be fastened upon him if the advances were treated as debts, he surrendered the certificate for the two shares and was credited with five thousand dollars, and was thereby released from liability to that extent had the advances been determined to be debts.    Since it has been judicially ascertained that they were *not* debts, and therefore that he could not have been held accountable for any excess in the amount advanced to him over

the amount payable to him under the will, he has endeavored, and is now striving, to repudiate what he deliberately did at the beginning of the litigation and to occupy a position directly opposite to the one asserted by him throughout the entire controversy. In other words, he now assumes an attitude distinctly the reverse of the one he first took with reference to the same subject-matter in precisely the same proceeding. This is, as the Scotch laconically say, " to approbate and reprobate." *In re Chesham*, 31 Ch. Div. 466. Can he do it?

If Charles E. Baker made a mistake in surrendering to the executor of his father's estate the two shares of the Car Wheel Company's stock, it was a mistake of law. The executor claimed that the " advances " were debts due to the estate. Charles E. Baker disputed this. The question as to whether they were debts or whether they stood upon the footing of advancements was purely a question of law, and in no sense one of fact. Without any fraud, imposition or misrepresentation on the part of the executor, Charles E. Baker deliberately made his choice between the alternative legal views presented ; but in making that choice he made a mistake ; as the subsequent development of the litigation shows.

His opinion of the law as to the *status* of the advances, though at first different from, finally coincided with that of the executor, or at least he voluntarily accepted and acted on the contention of the executor ; but according to the decision of this Court on the last appeal, the view concurred in by both executor and legatee was erroneous. The situation which confronted the appellant at the outset was precisely analogous to that which arises " where a man demands money of another, as matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid" the sum demanded. The one so making payment " can never recover back the sum he has so voluntarily paid." " If," said GIBBS, J., in *Brisbane* v. *Dacres*, 5 Taunt. 151, " we were to hold otherwise many inconveniences may arise ; there are many doubtful questions of law ; and where they arise, the party has an option, either to litigate the question,

or to submit to the demand, and pay the money. I think, that by submitting to the demand, he that pays the money, gives it to the person to whom he pays it, and makes it his, and closes the transaction between them." This was quoted with approval in *Sisson, &c.,* v. *Mayor, &c., Balto.,* 51 Md. 83; and by the Supreme Court in *Elliott* v. *Swartout,* 10 Pet. 154. The doctrine just alluded to is not confined to cases in which attempts have been made to recover back money paid under a mistake of law. It has a much broader application. In general it may be said that a mistake of law, pure and simple, is not adequate ground for relief. Where a party with full knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under an ignorance or error with respect to the rules of law controlling the case, the Courts will not in general, relieve him from the consequences of his mistake. 2 *Pom. Eq.,* sec. 842. The case of *Gebb* v. *Rose et al.,* 40 Md. 387, illustrates the rule. It appeared there that a deed had been executed by a married woman conveying her property to her husband upon certain trusts. The husband did not join in the conveyance. Upon the death of the wife and the husband without issue the heirs at law of the wife asserted title to the property and instituted an action of ejectment to recover possession of it. The trusts declared in the deed were to the sole and separate use of the grantor during her life ; then, after her death for the use and benefit of her husband, and after the death of both the property was to become the absolute estate of Mary Gebb. Upon a bill filed by Mary Gebb to restrain the prosecution of the suit in ejectment it was urged that the imperfection in the deed—the failure of the husband and wife to unite in a deed conveying the property to a *third* party inasmuch as the wife could not convey directly to her husband—was occasioned by ignorance and mistake and that, therefore, a Court of equity was clothed with power to correct the instrument and to give it such effect as the parties intended it should have. But this Court refused to in-

terpose. "The mistake here," said JUDGE ALVEY, speaking for the Court, "if it can be called such, was one of law simply ; a want of knowledge as to what the law required to make the deed good and effective. Such mistake or want of legal knowledge forms no proper ground for the assistance of a Court of equity, in the absence of actual fraud and imposition." *State, use of Stevenson,* v. *Reigart,* 1 Gill, 29; *Frazier* v. *Gelston et al.,* 35 Md. 313. We do not mean to say that there may not be exceptions to the general rule ; but this case does not fall within any exception. Many of the cases assumed to be within some exception to the rule were not so in reality, but were decided on the distinct ground that the mistake was one of fact and not of law ; or else the mistake was treated as analogous to, if not identical with, a mistake of fact. Such for instance is the case of *Cooper* v. *Phibbs,* L. R., 2 H. L. 149. A, being ignorant that certain property belonged to himself and supposing that it belonged to B, agreed to take a lease of it from B, at a certain rent. There was no fraud, no unfair conduct and all the parties equally knew the facts. The House of Lords set aside the agreement on account of the mistake. A majority of the Judges called it a mistake of fact ; whilst LORD WESTBURY stated that it was what is ordinarily designated a mistake of law, but held that it was really a mistake of fact. We are dealing in the case at bar with a distinctly different situation. The circumstances that the mistake was a *mutual* mistake of law does not alter the application of the general principle. In the case of *Eaglesfield* v. *Marquis of Londonderry,* L. R. 4 Ch. Div. 693, the Court of Appeal placed their decision distinctly upon the ground that both parties acted under a common or mutual misapprehension and mistake of the law, and therefore, without other circumstances, equity could not relieve. A mistake of law is no more a ground of relief in equity than it is at law. *Upton* v. *Tribilcock,* 91 U. S. 50.

Charles E. Baker, with a full knowledge of all the facts as already detailed at length, voluntarily chose to acquiesce in an erroneous view of the law with reference to the *status* of

the "advances" made to him, though he had an option to litigate the question or to submit to the executor's demand, and he finally closed the transaction by deliberately surrendering the stock, rather than incur the risk of having the value of that stock adjudged to be a debt due by him to the estate. He cannot now be heard to impeach his own act after discovering that both he and the executor proceeded upon an entirely mistaken conception of the law.

But again: The evidence shows that in point of fact these two shares of Car Wheel Company's stock never did belong to Charles E. Baker; and that he cannot rightfully claim them. Whilst he is charged with the sum of five thousand dollars for them on the ledger; on the balance sheet they appear as a loan to him. The uncontradicted evidence of William Baker shows that those shares were assigned to Charles E. Baker merely to enable him to become a director in the Car Wheel Company; and it further shows that Charles E. Baker distinctly stated that to be a fact. This evidence has not been questioned in any way and Charles E. Baker has not undertaken to dispute or to controvert it. Upon the former appeal those shares were treated as belonging to the estate of Charles J. Baker and there is nothing in the decision of that case to preclude the parties from showing that the shares did not constitute part of the advances to Charles E. Baker. The evidence is quite convincing that he never did own them. On the ground, then, that Charles E. Baker never was, and never was intended to be, the owner of the two shares and that they were not assigned to him with a view of vesting them in him, the claim which he sets up to them now must be disallowed.

For the reasons we have assigned we are entirely satisfied that the order of the Circuit Court in sustaining the exceptions to account D, and in overruling the exceptions to account C, is absolutely right and that it ought to be affirmed.

*Order appealed against affirmed with*
*costs.*

(Decided March 6th, 1902.)