# THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* ELLA B. HARVEY.  SAME *vs.* ARTHUR MEYER.

*Mistake in law*: *taxes voluntarily paid; no recovery; taxpayers' rights; collection of taxes; Baltimore City.  Statutes: construction; counties and Baltimore City. Statutes in derogation of common law.*

There can be no recovery of taxes voluntarily paid, under a mistake of law, even when there was no legal or moral obligation to pay.                                    p. 279

Every taxpayer is entitled to a full and fair hearing as to the assessment or, in the Annex, as to the increased rate on his property; but when he fails to resort to his remedy, he can not recover taxes paid by him, merely because in a suit by the City against another party for a similar tax the law was substantially declared invalid.               pp. 285-286

Property owners have the right in equity to restrain an unlawful sale of property.                              pp. 285-286

In general, where there is a statute applicable to the counties but there is none on the same subject applicable to the City of Baltimore, the presumption is that it was purposely withheld from the City.                          p. 282

Statutes in derogation of the common law ought to be strictly construed.                                      p. 283

*Quære,* whether, without express statutory authority, a municipal ordinance may change a rule of the common law.

p. 282

The Ordinance No. 88 of the Mayor and City Council of Baltimore, approved June 27, 1873, Art. 38, sec. 5, of the City Code of 1906, does not authorize suit to be brought to recover taxes paid in mistake of law.               p. 283

The collector of taxes for the City of Baltimore has no authority to refund or repay taxes which have been paid under a law afterwards declared invalid.        p. 283

*Decided June 12th, 1912.*

Two appeals from the Superior Court of Baltimore City (DOBLER, J.).

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and STOCKBRIDGE, JJ.

*Alexander Preston* (with whom was *S. S. Field* on the brief), for the appellant.

*Charles E. Ecker* and *Thomas Burling Hull* (with whom was *John C. Paterson* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellee to recover the amount of taxes erroneously paid the appellant by her for the years 1907 and 1908. The plaintiff was the owner of property located on a block of ground in the Annex to Baltimore City, bounded by Park avenue, North avenue, Bolton street and Lennox street. After the appellee had paid those taxes the Circuit Court of Baltimore City determined, in a case between *Sinton et al. and the Mayor, etc., of Baltimore,* that the property located in that block was only taxable for those two years at the sixty cent rate fixed by the statute for Annex property in the condition it then was, instead of at the full city rate which had been levied against it—the claim of the appellee in this action being for the difference between those rates. The appellant took an appeal to this Court from the decision of the Circuit Court for Baltimore City in the *Sinton case* but dismissed it on October 3rd,

1910, and after that, as is stated in an agreed statement of facts in the record, "formal written demand was made by the plaintiff on the defendant through its Appeal Tax Court for a refund of the said amount overpaid by her, which demand was refused by the Appeal Tax Court after having examined the claim and found the same in their opinion not to be well founded."

There was a verdict in this case in favor of the plaintiff and this appeal is from the judgment entered thereon. The plaintiff offered five prayers, which were granted, and the defendant five, all of which were rejected, but it will not be necessary to discuss them separately.

It is admitted by the appellee, that it is a recognized general rule of law that taxes voluntarily paid under a mistake of law cannot be recovered back, but it is contended that there are certain exceptions to the general rule which apply to this case. It will be well to refer to some of the principal decisions in this State on the subject, in order that it may be seen how far this Court and its predecessors have gone. In *Baltimore* v. *Lefferman,* 4 Gill, 425, it was said: "It is now established, by an unbroken series of adjudications in the English and American Courts, that where money is voluntarily and fairly paid, with a full knowledge of the facts and circumstances under which it is demanded, it cannot be recovered back in a Court of law, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party." That was an action of assumpsit to recover money paid by the plaintiff for the construction of a wall on the line of Jones Falls in the rear of his property, which was expended by reason of a notice from the City Commissioners that unless the wall was built by a day named they would have it done at the expense of the owner. The proceeding was taken by the City under a supposed authority of an Act of the Assembly, which was subsequently determined to be unconstitutional. That case was distinctly approved in *Morris* v. *Baltimore,* 5 Gill, 244, which was an action of assumpsit to recover taxes paid, which

were alleged to have been illegally levied, the plaintiff having demanded the return of the money paid by him, which the City refused.

In *Lester* v. *Baltimore,* 29 Md. 415, which was an action of assumpsit to recover back money paid by the plaintiff for a tax assessed against his lot, which in *Baltimore* v. *Porter,* 18 Md. 284, had been held to be illegal, JUDGE ALVEY said: "As was said in *Brisbane* v. *Dacres,* 5 Taunt, 144, and again in *Elliott* v. *Swartwout,* 10 Pet. 137, there are many doubtful questions of law. When they arise, the party, of whom claim is made, has an option either to litigate the question or submit to the demand and pay the money. But it would be most mischievous and unjust if he, who has acquiesced in the right by voluntary payment, should be at liberty at any time within the Statute of Limitations to rip up the matter and recover back the money * * * Instead of paying the bill for grading, the appellant should have pursued a similar course to that pursued by Porter (18 Md. Rep. 284) in regard to a claim for grading of the same street under the same supposed authority, and by testing the validity of the claim, defeated it. Failing to avail himself of a legal remedy for his protection, and electing to pay the demand made of him, rather than resort to litigation, he must abide his election, and be held as concluded by his conduct, with knowledge of all the facts," and he added that the *Lefferman* and *Morris* cases were conclusive of the question. In case of the *Potomac Coal Co.* v. *C. & P. R. R. Co,* 38 Md. 226, the same principle was announced in a suit in assumpsit against a railroad company to recover the amount of freight the plaintiff claimed the defendant had illegally charged. In *G. C. Coal & Iron Co.* v. *County Commissioners,* 59 Md. 255, which was an effort to recover back amounts paid the County Commissioners of Allegany County for taxes which were afterwards held to be illegally collected, JUDGE ALVEY said: "It is certainly true, as a general principle, according to the decisions of this Court, that where taxes have been paid under a mistake of law, they cannot be recovered back in an action at

law." In *Baltimore* v. *Hussey,* 67 Md. 112, it was held that money voluntarily paid, with full knowledge of the facts and circumstances, for taxes which were afterwards held to be illegally assessed, could not be recovered back, although paid by the plaintiff through a mistake as to her legal rights. See also *Monticello Co.* v. *Baltimore City,* 90 Md. 416, and *Baker* v. *Baker,* 94 Md. 627.

One of the exceptions relied on by the appellee is thus stated in the brief: "Where there was no legal or moral obligation to pay and the recipient has no right in good conscience to retain." Conceding that such an exception may exist in some cases, it has never been applied in this State to suits brought to recover taxes paid under a mistake of law. In some of the cases above cited, the parties would have been entitled to the benefit of that exception to the general rule as fully as this appellee could be, but recovery was denied. In *Lester's Case,* an action of assumpsit was instituted to recover money which had been paid for a tax which was wrongfully assessed, and the collection of it was unauthorized and unlawful, as had been determined before that suit was brought in the case of *Baltimore* v. *Porter,* 18 Md. 284. Another exception stated by the appellee is, "Where the law is doubtful," but we have seen above what JUDGE ALVEY said in reference to that.

In 2 *Pom. Eq. Juris.,* paragraphs 841-851, the author learnedly and forcibly discusses the subject of when mistakes of law can be relieved against in equity, and points out the kind of mistakes which have generally been held in well considered decisions to entitle parties to relief. But in paragraph 851 he says, "it is settled at law, and the rule has been followed in equity, that money paid under a mistake of law, with respect to the liability to make payment, but with full knowledge or with means of obtaining knowledge of all the circumstances, cannot be recovered back. There is an exception, as in the case of compromises, where the erroneous payment is induced or accomplished by a violation of

confidence reposed, lack of full disclosure, misrepresentation as to liability, or other similar inequitable conduct."

In this case there is nothing to show any inequitable or improper conduct on the part of the appellant in collecting the taxes, but so far as the record discloses, its contention that it had the right to collect the full rate was *bona fide,* and if the Appeal Tax Court believed that the block in which the appellee's property was situated was in a condition which made it liable to the full city rate, it was not only its right, but its duty to take steps to so assess it, and it was the privilege of the appellee to contest such an assessment not only before the Appeal Tax Court, but on appeal to the Baltimore City Court and even to this Court. Sec. 170 of Charter.

There is, however, what is called an exception, but which is in reality a modification of the common law rule which has been recognized in a number of decisions. Statutes have been passed authorizing the refunding of taxes paid in error. They vary in their terms, but their object is to change what is known as the common law rule. We have not been referred to any statute in this State which the appellee relies on, but it is claimed for her that "Ordinance No. 88, approved June 27, 1873, codified under Article 38, section 5, City Code, 1906," does give her the right to recover the excess which she paid, over what was properly chargeable against her for taxes for the years 1907 and 1908. That ordinance is as follows: "It shall be the duty of the Appeal Tax Court to examine into all claims for a return of taxes alleged to have been paid in error, and if upon examination by the Appeal Tax Court, it shall clearly appear that such claim or claims is or are well founded and that such taxes had been paid erroneously, the Court may direct the City Collector by order or orders in writing to refund or repay the same, and shall reject all such claims as may be considered doubtful or not well founded; provided not more than four years have elapsed from the first day of May, in the year in which the levy was made for said taxes to the time

application is made for the refunding of the same. And
the Appeal Tax Court shall keep a correct list or accounts
of all claims for taxes presented to or examined by said
Court, which shall contain the name or names of the person
or persons presenting such claims, and the amount of each,
including those rejected, and upon the representation of any
taxpayer that he or she has paid the taxes for which the col-
lector has demanded payment, the Appeal Tax Court is
hereby authorized to investigate the case; if the party shall
declare his or her receipt has been destroyed or lost, and
undoubtful proof or satisfactory evidence is given that the
said bill has been paid, the claim shall be abated."

In the case of *G. C. Coal & Iron Co.* v. *County Commis-
sioners, supra,* this Court had before it a statute in force in
the counties, and the appellee contends that the rule then
announced should be applied to the ordinance above quoted.
In prescribing the duties of the County Commissioners, what
was sec. 7 of Art. 28 (1860) at the time of that decision
(now sec. 9 of Art. 25 of Code of 1912) provided as follows:
"They shall, when satisfied that any error has arisen by
assessing property not liable to be assessed, rectify such
error and levy and pay to the proper person any money that
may have been paid in consequence of such error." That
was a proceeding to require by *mandamus* the County Com-
missioners to refund to the Coal Company taxes which it
had paid to the County Commissioners of Allegany County,
under the terms of a Public Local Law which was held in
the case of *Alexander* v. *Baltimore,* 53 Md. 100, to have been
repealed, and hence the taxes were payable to Baltimore City
by the stockholders and not to Allegany county by the com-
pany. This Court affirmed the action of the lower Court in
refusing to grant a writ of *mandamus,* and based its deci-
sion on the ground, amongst others, that the company had its
remedy by ordinary action at law for the recovery of taxes
erroneously paid by reason of the above statute. In dis-
cussing the question, the Court through JUDGE ALVEY, said:
"If, therefore, the statute has created and imposed a clear,

positive duty, as we think it has (where the Commissioners are satisfied of the error) such as would be required to support this application, to repay the taxes erroneously levied and received, that statute simply operates to change or modify the common law rule that taxes paid under a mistake of law cannot be recovered back. That being so, whether the taxes be paid under a mistake of fact or a mistake of law, would make no difference; for in either case the party receiving the taxes would be bound to refund them; and there would be an implied promise raised to pay the amount so received, and upon that implied promise, an action for money had and received could be maintained."

The principle thus announced is in accord with the decisions of many other Courts, and cannot be questioned in this State. Of course the common law rule could be changed or modified by statute, and as the error which had arisen in that case was "assessing property not liable to be assessed" to the company, the statute expressly authorized the County Commissioners "to levy and pay to the proper person any money that may have been paid in consequence of such error," and it was their duty to do so *"where the commissioners are satisfied of the error,"* as JUDGE ALVEY took occasion to add parenthetically. But this case presents some very different questions. In the first place, without some express authority given by statute, we are not prepared to say that a municipality can by ordinance change the common law of the State, to such an extent as is claimed here. *Barling* v. *West,* 29 Wis. 307; *Bostock* v. *Sams,* 95 Md. 412; 2 *Dillon on Munic. Cor.,* sec. 253. Inasmuch as there is such a statute applicable to the counties as the one above quoted, but there is none applicable to the city, the presumption is that it was purposely withheld from the city. But under this ordinance if "it shall clearly appear that such claim or claims is or are well founded and that such taxes have been paid erroneously" the Appeal Tax Court "may direct the City Collector by order or orders in writing to refund or repay the same." It is clear that under the charter the City

Collector has no power to refund or repay such a claim as that of the appellee. It is not easy to understand just what the ordinance refers to—especially as it provides for the application for refunding being made within four years from the first day of May, in the year in which the levy was made —but it must have been intended to apply to cases in which the money was still under the control of the collector. As the charter requires taxes to be collected within four years and prohibits them from being collected after that time, it may have been intended to apply to cases in which the collector was proceeding within the four years and still had the money in hand. It certainly could not have meant that the Appeal Tax Court could order the collector to pay such claims out of any money of the city he happened to have in hand, and if it did, it is clearly repugnant to the charter. It would create great confusion if it could be allowed. If it had been intended to provide for such a claim as that made by the appellee, the ordinance would certainly have been drawn differently. Even *statutes* in derogation of the common law are to be strictly construed, and if it be conceded that an ordinance changing the common law to the extent claimed for this one can be passed, without express authority, it must undoubtedly be construed strictly. Applying that well established rule of construction to this ordinance, it is in our judgment impossible to find in it anything that would indicate an intention to authorize suit to be brought to recover taxes paid under a mistake of law, and thereby change the common law rule which has been declared to be in force and applicable to Baltimore City in a number of cases, as shown by those cited above. The probabilities are that the ordinance was intended to authorize the Appeal Tax Court to correct errors and refund money paid under a mistake of fact, but however that may be we are of the opinion that it does not authorize an action under such facts and circumstances as exist in this case.

It may be said that it works a hardship on the appellee to require her to lose the amount erroneously paid while

those who went into Court were protected. That might be answered by saying that it would be as much of a hardship on those who were at the expense and trouble of the litigation which resulted in declaring the assessment illegal, if they are to be subjected to the expense of the litigation, but the appellee and others could go into the Appeal Tax Court and have their money with interest refunded.

A great many cases have arisen in reference to taxation in the Annex and it is to be hoped that most of the questions have been settled. But the charter provides means by which such questions can be settled with perhaps as little difficulty as it is possible to have disputes settled at law. Section 170 of the Charter provides that: "Any person or persons, or corporation assessed for real or personal property in the City of Baltimore and claiming to be aggrieved because of any assessment made by the said Court, or because of its failure to reduce or abate any existing assessment, may by petition appeal to the Baltimore City Court to review the assessment," and then provides in detail for the proceedings, including an appeal to this Court. It says that "In no case shall any such appeal stay or suspend the power or duty of the City to levy or collect taxes upon the property involved in said appeal, but such levy and collection shall proceed in all respects as if no appeal had been taken. If a final judgment shall not be given in time to enable the assessors or other officers to make a new or correct statement for the use of the proper authorities in levying taxes, and if it shall appear from such judgment that said assessment was illegal, erroneous or unequal, then there shall be audited, allowed and paid to the petitioner by the Comptroller the amount, with interest thereon from the date of the payment, in excess of what the tax should have been, as determined by said judgment or order of the Baltimore City Court." That section was amended by ch. 167, Acts of 1908, p. 604, so as to include "classification" as well as "assessment." We cannot adopt the suggestion of the appellant that the provision last quoted gives the appellee the right to still go into the Court under

that section, but we refer to it to show that ample provision is made for contesting the right of the City to make the assessment or new valuation. In *United Rys. Co. v. Balti more City,* 93 Md. 630, this Court reviewed a case, brought under that section, as to the right of the City to increase the rate of taxation on the railway company's right-of-way and tracks situated in the Annex, and inasmuch as it had paid the full City rate under protest for the year 1900, and as we held that rate could only be collected *after* the year 1900, we reversed the case to the end that an order might be passed directing and requiring the Comptroller to repay the petitioner the amount paid in excess with interest.

Inasmuch, then, as owners of property in the Annex have full opportunity to have such questions determined in advance, they ought not to be encouraged to adopt the course the appellee pursued, and then, if some other person succeeds in having the increase declared illegal, subject the city to suit to recover the money back, even if that could be done, which we are of opinion can not be under existing laws. It would necessarily cause much confusion if it was authorized and might work a great hardship on other taxpayers to have a large number of owners of property pay their taxes year after year and then finally sue the city. The theory of the City Charter is that the Mayor and City Council shall pay as they go, and not collect taxes year after year which they may be required to refund.

Every taxpayer is entitled to a full and fair hearing when his property is assessed and before an assessment is increased, and in the Annex before an increased rate of taxation is imposed. The charter and the laws of this State afford him ample protection, and we do not feel called upon or at liberty to extend the right to sue for taxes paid under such circumstances, as these were beyond what the charter or other laws of this State clearly and distinctly authorizes. Of course, in what we have said about section 170 of the charter, we do not mean to intimate any doubt about the right of a property holder to go into equity to protect his property from an

unlawful sale.   We have sustained that right in a number of cases, but when a party pays the tax without resorting to his remedy under the statute or in equity he can not recover it back as a general rule, and this case furnishes no exception to that rule.

So without discussing other questions or referring to the separate prayers, being of the opinion that the appellee was not entitled to recover, we will reverse the judgment without awarding a new trial.

> *Judgment reversed, without awarding a new trial, the appellee to pay the costs.*