24 So.2d 753

**COWART v. PRATER et al.**

5 Div. 408.

Supreme Court of Alabama.

Jan. 31, 1946.

402

Felix L. Smith, of Rockford, and Chas. S. Bentley, of Goodwater, for appellees.

Henry A. Teel, of Rockford, for appellant.

FOSTER, Justice.

The question in this case relates to the nature of appellant's right in an option granted him by respondents Carl Busey and wife contained in a lease to him by them of a dwelling house in Rockford. Relief was denied him, and he has appealed.

The question calls for a construction of paragraphs 4 and 5 of the lease, in which the option is set out. It provides:

"Lessors reserve the right to sell the said leased property, first giving the lessee the right to purchase the same at the proposed sale price. Lessee shall exercise his right to purchase the same within ten days after written notice from the lessors

of their intention to sell; and failing to do so, shall lose his right to so purchase the same hereunder.

"That in event the lessors shall sell the said leased property to a third person, the lessee shall vacate the same within thirty days after written notice of the sale by the lessors."

The lessors contend that they mean that if they wish to sell at a certain proposed price, though they have no prospective buyer offering to pay at that price, they can under that contract notify the lessee of that purpose, and the price at which they are willing to sell, and if the lessee does not exercise his option in ten days thereafter, he loses his right, and they may, as they did, sell to another at that or an advanced price without again giving him an opportunity to buy at that price, or notifying him that he may do so under the contract.

The lessee contends that the contract means that the lessors cannot cause him to lose his option until they have a purchaser ready to pay a certain price and until they have given the lessee an opportunity for ten days after written notice to buy the property at that price.

That construction finds support in the case of Price v. Town of Ruston, 171 La. 985, 132 So. 653.

 But we think that the record fails to show that the lessors gave to the lessee a distinct notice that they propose to sell the property at a certain price under such circumstances as to require him to exercise his option to do so in ten days thereafter. They by their course of dealing with the lessee led him to believe that he could buy the property at a certain price by a certain date, and before that date the lessee notified them that he was ready, able and willing to comply with such requirement. So that whatever may be the proper meaning of the contract, the parties have put a meaning to it which deprives them of the right to stand on its strict terms.

By letter of May 1, 1943, lessee was notified that the lessors had decided to sell the property, and that certain persons were negotiating for it, but no offer was definitely made fixing the lessee's right under the option, but they advised him that they wanted $1500. Shortly after that Carl Busey, one of the lessors, went to Rockford from Pensacola, where he was living and had negotiations with Cowart, the lessee, at ⸱ it, confirming his proposal to sell to him at $1500. Cowart made an effort to get the money then, but could not do so, and said that he wanted until Fall to get the money, and Busey said all right. But nothing definite was agreed upon in that connection, and nothing further occurred about it, until the lessors wrote a letter to the wife of lessee, intended for him also which he read, dated November 19, 1943, in which they were advised:

"Ernie Lee (that is, Mrs. Cowart), we have found us a place down here and Carl said if you all wanted that one of ours let him know at once. He said he would need at least a thousand dollars cash. We are having to pay $1500.00 down on ours, and he said if you could get up a thousand cash, he could get up the five hundred, and if you could pay us so much a month we could pay the rest of ours that way. We are having to pay $2500.00 for ours * * * Carl said * * * let us hear from you right away if you want the place because we are going to let it go, and we have to do something about ours by the 15th of Dec. * * * Write us by return mail for if you don't want it we have two others waiting to hear from us, and we have to do something quick."

Attention is here given to the fact that they had to do something about it by the 15th of December. Even this did not advise the lessee that the lessors had fixed a definite sum for the purchase of it, which lessee was required to accept before December 15th. It was a recognition of the fact that the lessee had a prior right to purchase, which they were giving him, but required a compliance by December 15th.

The correspondence was done between Mrs. Busey and Mrs. Cowart, the wife of lessee. Mrs. Busey was one of the lessors.

Mrs. Cowart wrote a letter to Mrs. Busey dated December 3, 1943, as follows:

"Audie went to two banks for the money and they said they was sure he could get the thousand dollars, but they would have to come and look at it first so he has been trying to get it here as it will be quicker. Rev. Fielding will let him have $500.00, and he thinks he can get the other from a man here, but hasn't got to see him he is so tied up with the filling station until he can't get off just any time as help is so scarce here everyone work-

ing but think may be he will find out today. Would have wrote earlier but thought every day he would know what he could do. Well I will finish your letter this morning as I didn't get to yesterday afternoon, Audie just got to see the party and he said he had the money now so if something didn't come up between now and the 15th we can take it. If there do we will call you write us where to call to. * * * I will write you again in a few days just as soon as we know what day we can get the money to pay down on the place. You can let us know about the payments per month on the bal. make it as small as you can as we will want to pay the other as soon as we can. Will go to get this in mail as I have been several days in finding out this much. Write soon."

Mrs. Busey wrote Mrs. Cowart a letter on the same date, as follows:

"The man we are buying from has to leave for the Army the 12th of Dec. and wants to get his business fixed so his wife can manage it before he goes. So you see we have to do something at once. He wants $1500.00 down on his place, and the other so much a month. We have the $500.00, but will have to get up the $1,000 some how. We are having to pay $2500 for it. I must quit. Write or call us at once. You can talk to Mr. Busey at Russells Drug Store #4. I think the phone # is 5179. He is there any time from 9 o'clock in the morning until 9 o'clock at night except one hour at noon."

By December 9th, lessee had made arrangements to borrow the money $1500, and called up Mr. Busey over the telephone at Pensacola, and told him that he could get the money from a man then sitting by the telephone with him, and wanted to know if he could not do a little better than $1500, and he said no that he had gotten a little better price all cash. Lessee then, the next day, December 10th, went to Pensacola and saw Busey, who told him he had sold the property to the Praters at $1600 on the 9th about ten o'clock in the morning. Whereas Cowart called him on the telephone about two or three o'clock in the afternoon. He also told Cowart that if he did not receive a check for the money from Prater by Saturday afternoon, he would sell to Cowart at $1600. But he did receive a check for it by that time and so notified Cowart.

There was a recognition of the prior claim of Cowart, and negotiations between them on that assumption, whereby $1500 from Cowart would buy it, virtually fixing December 12th, as the date for finally closing at that price. Cowart was prepared on the 9th, and offered to buy at that price on that day, and again on the 10th. But on both occasions it was too late.

■ The bill alleges that complainant before the filing of the bill offered to pay Prater the $1600, which he paid for the property, and that he then and there offered to do equity and to pay said sum to Prater. There is no question of innocent purchaser without notice presented. The bill complies with the requirements of the law in such a case—17 Ala.Dig., Specific Performance, ☞114(4), p. 603—and it was sustained by the proof.

■ We think the decree should be and it is reversed, and the cause remanded to the circuit court, in equity, so that a decree may be there rendered in favor of appellant granting specific performance and fixing the details of same, and supervise its execution. Provided appellant complies with the terms of the decree, he is entitled to the rent from the date when he offered to pay the $1600 to Prater for a conveyance of the property (Forrester v. Granberry, 211 Ala. 402, 100 So. 551), but he is due to pay interest on it since that date until he pays the money into court under the decree. He did not bring the money into court on filing the bill, so as to relieve him from the payment of interest. Kinney v. Pollak, 223 Ala. 654, 137 So. 669.

■ Appellees are taxed with all the costs of appeal and should be taxed with all the costs of the cause in the trial court (Robinson v. Wade, 220 Ala. 693, 127 So. 170), if appellant complies with the terms of the decree to be rendered.

Reversed and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.