## KENDALL A. YOUNG *v.* CITIES SERVICE OIL COMPANY, ETC.

[No. 135, September Term, 1976.]

*Decided October 11, 1976.*

The cause was argued before GILBERT, C. J., and MOORE and MELVIN, JJ.

*William F. Mosner* for appellant.

*T. Bruce Hanley,* with whom were *Wright & Parks* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Distressed by a decree of the Circuit Court for Baltimore County ordering him specifically to convey real property to Cities Service Oil Company (Cities) and charging rental paid to him, from the time of the exercise of an option by Cities to the date of trial, as an adjustment in the purchase price, Kendall Young has appealed to this Court.

The instant litigation arose out of a lease entered into between Young and Cities in August, 1957. The lease was for a term of twenty (20) years and called for the payment to Young of a fixed monthly rental [1] ". . . plus two cents ($.02) per gallon on each gallon of gasoline delivered to the underground tanks of the demised premises over and above the amount of 27,500 gallons per month."

Aside from Young's claim that he was unable to ascertain the correct "gallonage" payment due him, the bone of contention in this case is embodied in number paragraph 13 of the lease. That section provides:

"Tenant shall have the option during the term of this lease, or any extension or renewal thereof, to purchase the demised premises and all buildings, improvements, fixtures, tanks and equipment thereon owned by the Landlord for the sum of One Hundred Thousand and No/100 . . . . . . . ($100,000.00) Dollars payable as follows, $10,000.00 on notice of intention to exercise this option and $90,000.00 on delivery of deed. This option shall be exercised by the Tenant giving to the Landlord written notice of its intention to purchase, and title shall be closed at the earliest date subsequent to such notice after Tenant shall have completed its examination of title and found same to be satisfactory. On closing of title the Landlord shall execute and deliver to the Tenant a full covenant and warranty deed conveying to the Tenant or its

---

1. The fixed rental for the first ten years was $415 per month, and thereafter it was $565 per month.

nominee, in fee simple, free and clear of all liens, encumbrances and restrictions, the lands, buildings, improvements, fixtures, tanks and equipment herein demised. If prior to the exercise of the option herein provided, any portion of the demised premises shall be taken by any public or private authority having the right to take same by condemnation or eminent domain, such option or purchase shall thereafter apply to the remaining portion of the demised premises, except that the purchase price shall then be the amount remaining after deducting the amount awarded in such condemnation proceeding from the amount of the purchase price herein before provided and the down payment shall be reduced proportionately."

Cities, under date of September 10, 1974, wrote a letter to Young that it was exercising its option and purportedly enclosed the specified $10,000 deposit. Young acknowledged receipt of the letter but steadfastly denied that the $10,000 check was ever transmitted to him. In any event, Young, on October 13, 1974, responded to Cities' letter of September 27, 1974,[2] and he complained regarding the exercise of the option. At the same time, Young demanded verification of the amount of gasoline actually delivered to the demised premises.[3]

Cities notified Young by letter dated January 6, 1975, of the date and place of settlement, and in its letter, asserted it was entitled to an adjustment of $3,340. That sum represented a payment to Young as the result of the State's widening of Maryland State Highway 26.[4] Needless to say,

2. This letter is not part of the record.
3. During oral argument before this Court, counsel for appellant referred to a letter dated October 22, 1974, from Cities to Young. Although it is printed in Appellant's Brief and Appendix, the record does not reflect that it was entered into evidence. Hence, we do not consider it. Community Realty Co. v. Siskos, 31 Md. App. 99, 354 A. 2d 181 (1976); Scott and Wimbrow, Inc. v. Calwell, 31 Md. App. 1, 354 A. 2d 463 (1976).
4. The issue of the $3,340 was not litigated in the instant case but was reserved for future action between the parties. Young maintained that the leased premises were not affected by the road widening, and the trial judge

Young did not settle, and Cities, on February 7, 1975, filed a "Suit for Specific Performance."

During the period from September 10, 1974 through November, 1975, Cities continued to pay rental to Young. In its suit, Cities prayed reimbursement "for all rent paid by . . . [it] to . . . [Young] subsequent to September 10, 1974."

The chancellor, as we have previously indicated, decided that Cities was, indeed, entitled to specific performance, and he further decreed that the rental payments made to Young from October 1, 1974, aggregating $15,587.02, should be deducted from the purchase price.

Young poses to this Court two questions, the answer to which he suggests, collectively or individually, require reversal. He asks:

> "1. Does the record reflect that the option was properly exercised by tender of the required payment of $10,000.00 to Young when the notice of intent was given?
>
> 2. If the option was properly exercised, is Cities entitled to a credit for the rents that it voluntarily paid to Young from October 1, 1974, until the time of trial? "

Young's first question is easily answered; the second, however, is not so readily resolved.

I.

The record reflects that Young, by his own admission, received Cities' letter of September 10, 1974, although he denied receipt of the $10,000 check. Notwithstanding that the check was not, as he says, enclosed, he did not point that out in his letter of October 13, 1974 to Cities. In fact, he did not even mention it, although its absence would certainly have been of some material significance. The question put to us is answered, not by what we may or may not have

---

felt the description too insufficient to decide the question. A sum of $4,125 was ordered held in escrow pending disposition of Cities' claim to all or part of the monies paid by the State to Young.

concluded from the same factual presentation, but rather the reasonableness of the judge's findings, not the rightness. *Snowden v. City Council of Balto.*, 224 Md. 443, 448, 168 A. 2d 390, 392 (1961). This is so because we may have drawn different inferences from the evidence, but that is not to say that the trial judge erred in his conclusions. He had the opportunity, not afforded us, of observing the witness's demeanor on the stand, assessing his credibility, and determining how much weight to assign to the witness's narration.

The chancellor found as a fact that the $10,000 check was received by Young, and we think that based upon the evidence as recounted above, together with rational inferences properly drawable therefrom, his finding of fact was not clearly erroneous. Md. Rule 1086.

Young's second and obviously alternative issue is bimanous. The one hand poses the question whether Cities was obligated to pay rent after the exercise of its option. The other hand, to which we need only answer if the first response is negative, asks if, having voluntarily undertaken to make rental payments, Cities may recover the rents so paid?

For the reasons set forth *infra,* we are required to respond to both questions.

The lease between Cities and Young is silent as to the treatment of the rental by the parties once the option to purchase was invoked. The courts, in such a situation, would ordinarily apply the rule that has evolved out of similar circumstances. The general view with respect to the effect upon rental after the exercise of an option to buy is stated in 3 G. Thompson, *Commentaries on the Modern Law of Real Property* § 1155 (1959 Replacement). [Hereinafter cited as *Thompson on Real Property.*] There it is said:

> "If the lessee exercises his right to purchase within the time given by the lease, he then becomes an occupant of the premises as owner, subject to his compliance with the contract, which can be enforced by the lessor. Upon such acceptance the

relationship of lessor-lessee becomes that of vendor-vendee." (Footnotes omitted).[5]

The same source concludes his discussion of the subject with the statement:

"When the lessee exercises his right to purchase within the time given by the lease, the relation of landlord and tenant ceases and that of vendor and purchaser arises, and equitable title passes to the vendee." (Footnotes omitted).

1 *American Law of Property* § 3.84 (1952 ed.) contains a concurring standpoint, stating:

"When the tenant exercises his option to purchase the property, it is said that the relation of landlord and tenant ends and the relation of vendor and purchaser is created. The lessor may not thereafter avoid his duty to convey by declaring a forfeiture of the lease, and *the lessee is no longer liable for rent.* (Footnotes omitted) (Emphasis added).

While we have been directed to no Maryland case that has considered the issue here presented, the rule has been followed in *United States v. Bethlehem Steel Company,* 215 F. Supp. 62 (D. Md. 1962). In that case, Bethlehem ceased paying rent after it had asserted its right to purchase pursuant to the option contained in the lease with the government. The United States then brought a declaratory action to construe the contract and to recover rent. Judge Winter, in deciding the matter adversely to the government, wrote:

"There can be little question that if Bethlehem validly exercised its option . . . , it would have ceased to be a tenant and would have become a

---

5. This reasoning is grounded on the treatment of the option to purchase as ". . . a continuing offer to sell, to which the notice of the election to purchase is an acceptance, and the two constitute a completed contract of sale as of the date of the notice." 3 *Thompson on Real Property* § 1155 (1959 Replacement).

contract purchaser without liability for further payment of rent, because its leasehold interest would have merged into the greater estate, 3 Thompson, Real Property (Perm. Ed. 1940) § 1332." [6] 215 F. Supp. at 70.

The Supreme Court of Illinois in *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392, 13 A.L.R.2d 1448 (1949) held that:

"Where the relation of landlord and tenant exists under the terms of a written lease, containing an option to purchase which the lessee exercises, he is no longer in possession as a tenant, but his possession is that of vendee. (*Bakaitis v. Fink*, 340 Ill. 440, 172 NE 923, 51 C.J.S., Landlord and Tenant, § 82 (a)." 404 Ill. at 554, 89 N.E.2d at 402, 13 A.L.R.2d at 1460.

*See also Cowart v. Prater*, 247 Ala. 401, 24 So. 2d 753 (1946); *Lewis v. Lockhart*, 379 P. 2d 618 (Alaska, 1963); *Capitol Land Co. v. Zorn*, 134 Ind. App. 431, 184 N.E.2d 152 (1962); *Gassert v. Anderson*, 201 Minn. 515, 276 N. W. 808 (1937).

We hold that a lessor is not entitled to rent after the lessee has validly exercised his option to purchase unless there is an express agreement in the lease to the contrary. We, thus, align ourselves with the prevailing view of other courts which have considered the question.

Having so held, we now turn to whether monies mistakenly paid as rental may be recovered from the vendor.

It has long been held that monies paid under a mistake of fact may be recovered by the payor, but that monies paid under a mistake of law cannot be recovered. *Oxenham v. Mitchell*, 160 Md. 269, 153 A. 71 (1931); *Helser v. State*, 128 Md. 228, 97 A. 539 (1916); *Baltimore v. Harvey*, 118 Md. 275, 84 A. 487 (1912); *Baker v. Baker*, 94 Md. 627, 51 A. 566 (1902);

---

6. Judge Winter, in reaching his decision, also relied on Cities Service Oil Co. v. Viering, *supra*; Master v. Roberts, 244 Pa. 342, 90 A. 735 (1914); Knerr v. Bradley, 105 Pa. 190 (1884); 1 American Law of Property, § 3.84 (1952 ed.).

*Baltimore v. Hussey*, 67 Md. 112, 9 A. 19 (1887); *George's Creek Coal Co. v. County Commr's.*, 59 Md. 255 (1883); *Morris v. Baltimore*, 5 Gill 244 (Md. 1847); *Baltimore v. Lefferman*, 4 Gill 425, 45 Am. Dec. 145 (Md. 1846). The rule, while easy to articulate, is difficult to apply. One obstacle encountered in its application is that the distinction between law and fact is often murky. Frequently the two are mixed together.

In the case *sub judice*, however, much of the usual fog that settles over the issue has been lifted. The light shone through in the following exchange between the court and Cities' counsel:

> "The Court: You say you are entitled to rents; if you are entitled to rents why did you turn them over to Mr. Young?
>
> [Counsel]: Well, Your Honor, I think it's fairly clear that the relationship between Mr. Young and Cities Service Oil Company has not been cordial,[7] needless to say. Had Cities Service stopped paying rent in [sic] September 10, I am sure that Mr. Young would have brought action of ejectment against us, and may have had good grounds to do it.[8]
>
> The Court: Not if you validly exercised your option to purchase.
>
> [Counsel]: Your Honor, *Cities Service chose the legal remedies in this,* and felt it would put them in a better position. We have not breached the elements of this lease; Mr. Young has breached the option to purchase, he is the wrongdoer in this case. We have tried

---

7. The record amply supports counsel's view of the relationship between the parties.

8. *But see* Cities Service Oil Co. v. Viering, *supra.*

to maintain ourselves and maintain the provisions of this lease throughout its tenure from 1957, as best Cities Service Oil Company could." (Emphasis added).

That Cities elected to pay the rent as part of their *choice of legal remedies* is plain. They so chose in the erroneous belief that their failure to do so might lead to their ouster from the premises as a result of a successful ejectment proceeding initiated by Young. That Young could have filed an ejectment case against Cities does not give rise to the conclusion that he would have prevailed. In fact, as we have pointed out above, the prevailing law is to the contrary. Cities, a corporate being, is just like any other person, charged with knowledge of the law, and as so accountable, should have known of its vulnerability in making rental payments to Young.

Cities, seemingly recognizing the general rule that monies paid under a mistake of law may not be recovered,[9] seeks to avoid that somewhat harsh principle by directing our attention to the Court's quotation in *Oxenham v. Mitchell, supra* at 280, of 3 J.N. Pomeroy, *A Treatise on Equity Jurisprudence*, § 849 (4th ed. 1918) [hereinafter cited as *Pomeroy*] that:

"A private legal right, title, estate, interest, duty or liability is always a very complex conception. It necessarily depends so much upon conditions of fact, that it is difficult, if not impossible, to form a distinct notion of a private legal right, interest or liability separated from the facts in which it is involved and upon which it depends. Mistakes, therefore, of a person with respect to his own private legal rights and liabilities may be properly regarded — as in a great measure they really are — and may be dealt with as mistakes of fact. Courts

---

**9.** The entire concept of the distinction between mistakes of law and fact first appeared in Bilbie v. Lumley, 2 East 469 (1802).

have consistently felt and acted upon this view, though not always avowedly."

The above quotation from *Pomeroy*, read literally obliterates the difference between mistakes of law and mistakes of fact unless the mistake is made between governments, or between a government (or its sub-division) and a private person. We do not interpret *Oxenham* to have altered the Maryland law that differentiates between mistakes of law and those of fact because all *Oxenham*, with respect thereto, did was point up the confusion that exists in the mistake of law-mistake of fact area.

Recently in *Rapley v. Montgomery County*, 261 Md. 98, 274 A. 2d 124 (1971), Judge Singley, speaking for the Court of Appeals opined:

> "This Court has consistently recognized the rule that money paid under a mistake of law ordinarily cannot be recovered in an action at law, nor can recovery ordinarily be had in equity, in the absence of special circumstances. 1 Poe, *Pleading and Practice* § 119-120A at 145-50 (6th Ed. Sachs 1970). See, for example, *Gross v. Stone*, 173 Md. 653, 664, 197 A. 137 (1938); *Oxenham v. Mitchell*, 160 Md. 269, 153 A. 71 (1931); *Louis Henri de Gallard, Prince de Bearn et Chalais v. Winans*, 111 Md. 434, 477, 74 A. 626 (1909), and particularly our more recent decisions in *Debelius Realty Co. v. Chassagne*, 260 Md. 109, 271 A. 2d 527 (1970); and *Baltimore & Annapolis RR Co. v. Carolina Coach Co.*, 206 Md. 237, 111 A. 2d 464 (1955), none of which involved the recovery of taxes." 261 Md. at 106, 274 A. 2d at 128.

*See also Brylawski v. Ellis*, 237 Md. 556, 557-8, 207 A. 2d 224, 224-25 (1965) wherein the Court flatly stated it did not concur in Brylawski's contention that the difference between mistakes of law and fact had largely disappeared in Maryland.

We discern in the case now before us an "absence of special circumstances" which would take the matter outside the scope of the general rule.

In 1 Poe's *Pleading and Practice* § 119, (6th ed. H. M. Sachs, Jr., 1970) [hereinafter cited as *Poe*], the view is offered that:

> ". . . [T]he eventual, no doubt most equitable and probably most practical rule that will at some time in the future be followed will be to allow recovery in assumpsit when monies are mistakenly paid without permitting the technical and very limited objection that they were paid solely by mistake of law."

Whether Mr. Sach's prognostication will prove to be correct remains to be seen. The law of Maryland at the present time, however, is, as that author notes, to the contrary. 1 *Poe* § 119.

Cities' voluntary payments to Young were in their own words an attempt to "put them [Cities] in a better position." Patently, Cities made a calculated tactical decision which turned out to be wrong. Tactical mistakes in battle are paid for in casualties, but in civil litigation they are paid for in dollars.

We think Cities was not, under the circumstances of this case, entitled to recover the monies paid to Young as rental, inasmuch as the payments resulted from a mistake of law.

> *Decree affirmed in part, and reversed in part, and case remanded for the passage of a decree in accordance with this opinion.*
>
> *Each party to pay his own costs.*