## Newell's Appeal.

100   513
133    68

1. A. leased a lot to B. for the term of one year at a certain rent, the lease giving to B. the option to purchase the lot at any time within the year for a fixed sum. B. entered upon the premises, erected valuable improvements thereon, and within the year notified A. that he elected to take the property, and tendered the whole amount of the purchase money. A. put off the execution of the deed from time to time, and finally refused altogether to execute it. B. having filed a bill for specific performance against him, *Held*, that as soon as B. signified his intention to take the property, the lease was at an end, and there was a contract of sale mutually binding on both parties, and that B. was entitled to the relief prayed for.

2. Bodine *v.* Glading, 9 Harris 50, distinguished.

May 9th 1882. Before SHARSWOOD, C.J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas of *McKean county :* In Equity. Of May Term 1881, No. 190.

Appeal of Augustus W. Newell from a decree of the Common Pleas of McKean county, ordering specific performance of a contract for the sale of real estate entered into by appellant with one Abraham Simon.

On September 2d 1879, Simon filed a bill in equity against Newell wherein he alleged that defendant, by indenture bearing date April 16th 1877, leased to the complainant a certain lot of ground in the borough of Bradford, for the term of one year from the date thereof at the rent of sixty dollars per annum, payable semi-annually in advance, with the privilege of four years additional ; that the lease contained, inter alia, a covenant by which the defendant granted to the complainant "the privilege of purchasing the said lot at any time within one year from the date of the lease for the sum of four hundred dollars ;" that about the first day of April 1878, the complainant demanded a deed from the defendant, offering to pay him the sum of four hundred dollars ; that the defendant told the complainant that he had not time to make the deed, but would attend to it soon, adding that he was busy, and that it made no particular difference to him ; that afterward, before the 16th day of April 1878,

4 OUTERBRIDGE—33

the complainant again demanded a deed of the defendant, tendering him the sum of $400 in lawful money, which the defendant refused to accept, saying that he had not time to make a deed but that he would attend to it soon; that the complainant at divers times in the year 1878 asked the defendant to deliver the deed, tendering him at the same time the said sum of money, which the defendant refused to accept saying that he was in no hurry; that afterward the defendant tendered a deed, but upon the complainant's request for a little more time to pay, the defendant granted further time, saying that it would make no difference to him; that on January 8th 1879, the complainant again tendered the defendant the sum of four hundred dollars, who refused to accept the money and deliver the deed; that the plantiff had been and was ready to make payment, but that the defendant refuses to make the conveyance; that the complainant in contemplation of ownership has made improvements at a cost of $2,500, and that failure to convey the lot would work him irreparable injury. The bill prayed for a decree directing a conveyance of the lot, and for general relief.

In his answer the defendant admitted that the provisions of the lease were correctly stated in the bill; that on January 8th 1879, the complainant made a tender which was declined; that the complainant demanded a deed of the defendant which he refused to deliver; that the amount of the tender was not $400 but $420, of which $20 was for interest; that, while it was true that the complainant has erected a dwelling-house and outbuildings on the lot, the cost of the same was exaggerated in the bill. The answer denied the truth of all the averments of the bill other than those mentioned; it averred that on or about April 1st 1878, the defendant distinctly said to the complainant that he would live up to the contract, and at that time or subsequently declined to extend the time of purchase; it further averred that the complainant did not at any time before the end of one year from the date of the lease tender or offer to the defendant any money for purchase of the above lot, or demand delivery of the deed for the same; that the defendant continued to require of the complainant payment of rent according to the terms of the lease, and that the complainant endeavored to make with the defendant a new bargain, and lastly that the defendant's subsequent tender of a deed was a new proposition.

The case was referred to J. M. McClure, Esq., as examiner and master, who reported as follows:—

First. The defendant's averment in paragraph 7 of his answer, is in these words: "On or about the 1st of April 1878, I said distinctly to the complainant that I should live up to the contract," and in the same paragraph the defendant avers that he "then (on or about the 1st of April, 1878) or subse-

quently when conversing with him on the subject, declined to extend the time of purchase." This certainly shows that "on or about the 1st of April, 1878," the plaintiff made known to defendant his intention to purchase, and it also proves that the plaintiff was not sleeping on his rights. The defendant does not refer to this conversation in his testimony. In view of this conversation, was it not incumbent on the defendant to prepare and tender to the plaintiff a deed for the lot in question? That the plaintiff intended to "live up to the contract" is clear from the fact, that, on the 1st of April, 1878, he and his partner made their note for the purpose of raising the money required to purchase this lot.

Second. The plaintiff erected valuable buildings upon the lot in question.

Third. The plaintiff testifies that he notified the defendant in March 1878 of his intention to take the lot.

Fourth. The plaintiff testifies that on or about April 5th, 1878, in the presence of M. Ruslander, he tendered to defendant $400 and demanded a deed.

M. Ruslander corroborates his testimony as to making of tender and demanding deed.

Fifth. Plaintiff testifies that in July 1878 defendant said the deed was ready; that he (the plaintiff) examined the deed at defendant's office and then offered to pay $200 on account of the consideration, and balance in 30 or 60 days, and that the defendant thereupon said he would wait until plaintiff could pay all. The defendant says this was a new proposition, but does not disclose what the proposition was, nor does he produce this deed or account for its non-production. There is nothing in the testimony to show what the consideration named in this deed was.

Sixth. Plaintiff testified that after the 5th of April 1878 he asked defendant at divers times to deliver deed.

Seventh. Plaintiff testified that in August 1878, he again asked defendant to "fix up matters," and again tendered the $200, which the defendant declined to take, saying that he was in no hurry for the money and would rather "get it all together."

David Harris corroborates plaintiff's testimony as to this tender and as to the reply of defendant.

Eighth. G. Herz testifies that on April 15th 1878, acting under the instructions of plaintiff, he called on the defendant and said to him that the plaintiff had left town and had instructed him to see him (the defendant) about the deed, and that the defendant replied that he was too busy and could not attend to it just then, but would attend to it at some other time. The plaintiff testifies that he gave Herz such instructions.

The defendant denies the notice and the tender within the year of limitation, and produces evidence to show that the tender alleged to have been made April 5th 1878 could not have been made at his office, as alleged, for the reason that the office described was not in existence at the time named. He denies, too, that Herz called upon him on April 15th 1878.

Having found the facts as aforesaid, the master therefore recommends to your Honors to order and decree that upon the payment of four hundred dollars by the plaintiff to the defendant, with interest from April 16th 1878, the latter shall make and execute a conveyance, by good and sufficient deed, of the property described in the agreement of lease entered into by plaintiff and defendant on April 16th 1877, a copy of which is attached to plaintiff's bill.

Exceptions to this report filed by the defendant were dismissed by the court, and the report was confirmed, a decree being entered in accordance with the recommendations thereof. Whereupon the defendant took this appeal, assigning for error the dismissal of his exceptions and the confirmation of the report.

*R. B. Stone*, for the appellant.—The contract is unilateral and time is of the essence of a unilateral contract: Bodine *v.* Glading, 9 Harris 50. Where there are no mutual remedies time is always material: Westerman *v.* Means, 2 Jones 97.

Possession by the complainant, unless distinctly claimed to be under the contract, does not alter the case nor affect the application of these rules: Mills *v.* Haywood, L. R. 6 Ch. D. 196.

Possession before and after the termination of the option under the lease is no part performance of the contract to purchase: Jones *v.* Peterman, 3 S. & R. 543.

The master found no fact as to possession, forbearance, indulgence, tender or demand. The evidence as to notice of election is uncertain and contradictionary, and when such is the character of the evidence, equity will not decree specific performance: Fussell *v.* Rhodes, 2 Phila. 165.

*William M. Boggs*, for the appellee.—The complainant having made his election to purchase the land, time was not of the essence of the contract. Time was of the essence of the contract as to the option, but not as to the performance: Smith and Fleek's Appeal, 19 Sm. 478. Where time admits of compensation it is never an essential part of an agreement: De Camp *v.* Feay, 5 S. & R. 325. When time is designated in articles of agreement for the payment of purchase-money and the delivery of the deed, and time is allowed to pass

without payment or delivery of the deed, the time for performance becomes indefinite but mutual and dependent whenever it should occur : Hatton *v.* Johnson, 2 Norris 219. When the right of property has passed and all that remains to perfect the contract is payment and delivery, each party may wait until quickened by demand from the other side, and no right of action or forfeiture will accrue until default is made by a refusal to pay or deliver : Sadler *v.* Gould, 6 Phila. 529. Where there are mutual dependent covenants, tender of a deed must be proved unless a waiver is shown : Hester *v.* McNeille, 6 Phila. 234. The defendant never exacted strict performance, but on the contrary waived performance, therefore it is not competent for him to rescind without notice of an intention to insist on a literal construction: Forsyth *v.* Oil Co., 3 Sm. 168. The master's findings will not be disturbed except for plain error : Bedell's Appeal, 6 Norris, 510.

Mr. Justice GORDON delivered the opinion of the court May 22d 1882.

On the 16th of April 1877, Augustus W. Newell, the defendant below, leased to Abraham Simon, the plaintiff, a certain lot of ground in the borough of Bradford, for and during the term of one year, with the privilege of the extension of the term for four years. There was also contained in this lease a provision by which Simon had the privilege of purchasing the leased lot at any time within one year from the date of the lease, on payment of the sum of four hundred dollars. The plaintiff entered upon, took possession of the property and erected thereon a dwelling house, and such out-buildings as were considered convenient and suitable, and, as we have it from the report of the master, before the expiration of the first year, he not only notified the defendant, that he elected to take the property according to the provision contained in the lease, but tendered to him the whole amount of the purchase money. Newell, instead of complying with his contract at once, put off the execution of the deed from time to time, on the pretext of other engagements, and finally refused altogether so to do. This bill was brought for the purpose of enforcing this contract, and the court below entered a decree in favor of the plaintiff. We really cannot see what else could have been done under the facts of the case.

The contract is plain and unambiguous ; the plaintiff complied with his part of it ; he erected valuable improvements, and is in the possession of the premises, as he has a right to be. If now equity has no power to enforce the execution of this agreement ; if the plaintiff's only remedy is to turn out, abandon his possession and improvements, and for redress resort to an action

[Newell's Appeal.]

on the case, we had better abandon our equity practice and revert
to our old forms. But it is said there is no mutuality in this
contract, and therefore, the case falls within the ruling of Bodine
*v.* Glading, 9 Har. 50. Admitting the premise thus put forth, and
conclusion results as of course. But this premise is false, for
the contract, as it now stands, is not merely one-sided. Just as
soon as Simon gave the defendant notice that he elected to
take under the provision for the sale of the property, he as
effectually bound himself to pay for it as though such had been
the original contract, and at any time after the 16th of April
1878, the vendor could have tendered a deed and compelled such
payment. From that time the lease was at an end and the con-
tract was one of sale, and as such the vendor could have enforced
it. And suppose we refuse to carry into effect the decree of the
court below ; that is, refuse to compel the vendor to exe-
cute a deed; what will be the result? The vendee has per-
formed his part of the contract, and upon that he can stand.
The lease is of no effect ; there can be no distress for rent or
recovery under the landlord and tenant acts ; has, therefore, the
vendor no remedy? Certainly he has. He may maintain
assumpsit on the contract, or bring an equitable action of eject-
ment, but in either case, before he can recover he must
tender a deed. Why then talk about the one-sidedness of
the contract, or the want of mutuality in remedy. It
is true, that for a consideration which he thought to be
sufficient, Newell gave Simon the power to determine, within
the year, whether the contract should continue as a lease, or
become operative as a sale. But when Simon signified his
election he not only bound Newell, but bound himself, and this
just as much so as though it had, from the outstart, been an
absolute contract of sale.

Bodine *v.* Glading was a very different case. There, there was
a sale of real estate at public auction, and, by the terms of the sale,
the purchase money was to be paid within fifteen days, or the
property might be resold at the risk and expense of the pur-
chaser. The purchaser refused to pay his bid, and a bill was
filed to enforce payment. It was held that it could not be sus-
tained, and this for the reason, that after the time fixed for the
payment, the vendee had no remedy whatever for the enforce-
ment of the contract against the vendor ; hence the want of that
mutuality, in the way of remedy, which is required to sustain
specific performance in equity. This may be very good law,
though we are not disposed to commit ourselves to the full text
of that case by an unqualified approval ; but it certainly does
not fit the case in hand. This doctrine would have applied in
point, had Newell attempted, by bill, to have enforced the con-

[Thorne, McFarlane and Co. *v.* Warfflein.]

tract of sale after the time fixed for the purchase, and without Simon's election to pay for the property.

But such is not the case now before us. There was an election by the plaintiff, and that election perfected the contract, and clothed the parties with equal rights and powers of remedy.

The decree of the court below is affirmed, and the appeal dismissed at the costs of the appellant.

Chief Justice SHARSWOOD dissented.