## Master *v.* Roberts, Appellant.

*Equity—Real estate—Specific performance—Landlord and tenant—Option to purchase—Laches.*

1. Where the relation of landlord and tenant exists under the terms of a written lease containing an option to purchase at a stipulated price, which option is properly exercised during the term, the relation of landlord and tenant is thereby terminated and thereafter the parties stand in the relation of vendor and vendee under the agreement.

2. Upon a bill in equity for specific performance on a contract for the sale of real estate, where it appeared that the plaintiff had been in possession of the premises under a lease from the defendant, with an option to purchase, and the court found as a fact that the option to purchase was properly exercised, which finding was not excepted to, the conclusion of law that no rent was due by the plaintiff to the defendant after the exercise of the option followed as a matter of course, and a decree for specific performance was properly entered.

3. It was held that laches would not be imputed to the plaintiff in such a case, where it appeared that plaintiff had continuously offered to pay the stipulated price under the option of purchase for four years prior to the filing of his bill to compel specific performance.

4. Laches will not as a general rule be imputed to one in possession of land for delay in resorting to a court of equity to establish his right to the legal title.

Argued Feb. 17, 1914. Appeal, No. 349, Jan. T., 1913, by defendant, from decree of C. P. Schuylkill Co., Sep-

tember T., 1911, No. 6, upon bill in equity in the case of
Milton H. Master v. Samuel G. Roberts.    Before
BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER,
JJ.  Affirmed.

Bill in equity for specific performance of contract for
the sale of real estate.  Before BECHTEL, P. J.

From the findings of the trial judge the following
were the facts:

Prior to November 18, 1899, Milton H. Master was the
owner in fee of the premises described in the bill of com-
plaint and resided thereon, and was at that time and
remained continuously thereafter in sole possession
thereof.  On that date the premises were sold at sheriff's
sale upon a judgment against Master, and were pur-
chased by Samuel G. Roberts, for the sum of $150.  On
November 22, 1899, Roberts agreed in writing with Mas-
ter to convey the premises to Master, for the sum of
$4,800, at any time within three years from that date,
Master to pay interest on that sum, taxes and fire insur-
ance premiums.  Master performed all the terms and
conditions mentioned in said agreement, and all pay-
ments contemplated by said agreement were accepted by
Roberts up to March 19, 1906.  Prior to this time Master
had offered to pay Roberts the $4,800 for a conveyance
of the premises as mentioned in the agreement and con-
tinued to do so, but nevertheless Roberts refused to con-
vey the property, alleging that by reason of his compli-
cations with a certain Miners Brewing Company he was
unable to do so.  On March 19, 1906, it was agreed in
writing between Roberts and Master, that Master take a
lease for the premises from Roberts, and in considera-
tion thereof, that Roberts would convey the premises to
Master for $5,500 as soon as he, Roberts, could get his
matters settled up with the Miners Brewing Company.
Master, being still in sole possession of the premises,
from March 19, 1906, to January, 1910, continuously
offered to pay the sum of $5,500 to said Roberts, and de-

manded a conveyance of the property. At first Roberts pleaded his inability to convey on account of his troubles with the Miners Brewing Company, and finally in January, 1910, declared he would not convey the property to Master. In January, 1910, and prior thereto, the troubles and complications of Roberts with the Miners Brewing Company were disposed of and ceased to exist. On August 5, 1911, Master filed his bill in equity, praying the court to decree that Roberts convey to him, Master, the property according to the terms and conditions of the contract. After a full hearing and consideration of the case the court decreed specific performance as prayed for in the bill. Defendant appealed.

*Errors assigned* were in overruling exceptions to the answers to requests for conclusions of law and the decree of the court.

*George M. Roads,* for appellant.

*Otto E. Farquhar,* with him *Daniel J. Ferguson,* for appellee.

OPINION BY MR. JUSTICE ELKIN, March 2, 1914:

The only question about which we have any doubt in this case, is whether any rent was due and unpaid at the time Master elected to exercise his option to pay the purchase price agreed upon and take title to the property. The general rule in such cases is that where the relation of landlord and tenant exists under the terms of a written lease, containing an option to purchase at a stipulated price, which option is properly exercised during the term, the relation of landlord and tenant is thereby terminated, and thereafter the parties stand in the relation of vendor and vendee under the agreement: Newell's App., 100 Pa. 513; Knerr v. Bradley, 105 Pa. 190. It follows that if Master properly exercised his option to purchase, he stood in the relation of vendee

under the agreement from the time the contract became mutually binding upon both parties. After that time the relation of landlord and tenant ceased to exist, and the rights of the parties must be determined upon the basis of a contract to sell and convey on one side and to purchase on the other.

The learned court below found as a fact that the option to purchase was properly exercised, and as a conclusion of law that no rent was due by Master and demandable by Roberts at the time of filing the bill or at the present time. The conclusion of law logically followed the findings of fact which were not assigned as error. The facts having been found against appellant, the above stated rule of law is applicable, and nothing further need be said on this branch of the case.

We quite agree that laches cannot be imputed to Master either upon the facts or law of this case. Laches will not as a general rule be imputed to one in possession of land, for delay in resorting to a court of equity to establish his right to the legal title: White v. Patterson, 139 Pa. 429. The learned chancellor found as a fact that Master continuously offered to pay the stipulated price under the option to purchase from March 19, 1906, up to and including January 1, 1910. This finding is not assigned as error, and is a complete answer to the argument that Master had slept on his rights and had not been diligent in the assertion of them. He was in possession, standing upon his legal right to purchase, of which he gave due notice to Roberts, and cannot be convicted of laches because he did not sooner go into a court of equity to compel specific performance of the contract upon which he stood at all times. The remaining assignments are without substantial merit and certainly nothing suggested by them would justify a reversal of the decree entered in the court below.

Assignments of error overruled and decree affirmed at cost of appellant.