John W. Keogh, Plaintiff in Error, v. Robert B. Peck, Defendant in Error.

Gen. No. 34,349.

504

Heard in the first division of this court for the first district at the June term, 1930. ■■■■ Opinion filed January 26, 1931.

McNab, Holmes & Long and Alden, Latham & Young, for plaintiff in error; Hobart P. Young and Allan W. Cook, of counsel.

Samuel B. King and Montgomery, Hart, Pritchard & Herriott, for defendant in error; Samuel B. King and Louis E. Hart, of counsel.

Mr. Presiding Justice Matchett delivered the opinion of the court.

I. By this writ of error plaintiff seeks to reverse two judgments in favor of defendant in actions of assumpsit entered upon the verdicts of a jury as directed by the court. While the causes were begun separately in the trial court, they were consolidated for hearing and were heard at the same time and by the same judge and jury. However, separate verdicts were returned, separate judgments entered, separate bills of exceptions preserved and separate records filed in this court, where the causes by order have been consolidated for hearing.

In the trial court one cause was No. 465755 and that cause is No. 34349 in this court; the other cause was No. 477022 in the trial court and is No. 34350 in this court.

There seems to be no material controversy as to the actual facts. On March 26, 1900, Comfort E. Peck entered into a 99-year lease with one James B. Keogh, as lessee, demising to him certain premises in the lease described. Comfort E. Peck was at that time the owner in fee simple of said premises, which were improved. The lease by its terms bound not only the parties but also their heirs, executors, administrators and assigns, and in and thereby the lessor owner granted an option to the lessee to purchase the demised premises at any time during the term of the lease for the sum of $10,000.

On December 6, 1911, Comfort E. Peck by quitclaim deed conveyed the premises to defendant, Robert B. Peck. On June 1, 1915, James B. Keogh, the lessee, by a writing assigned his lease to plaintiff, John W. Keogh. The assignment is in evidence as plaintiff's exhibit C. Plaintiff elected to exercise his option to purchase the premises, and on February 21, 1922, gave written notice of his intention so to do to defendant. Defendant refused to accept the offer made and refused to execute a deed, claiming that plaintiff, while in possession of the premises, had committed waste thereon. On April 10, 1922, defendant notified plaintiff of his election to terminate his tenancy.

On March 1, 1922, plaintiff filed his bill to compel the specific performance on the part of defendant to convey and secured a decree in his favor on April 10, 1923. Defendant Peck appealed to the Supreme Court of Illinois, and that court affirmed the decree on February 17, 1925. *Keogh v. Peck,* 316 Ill. 318. On June 19, 1925, defendant conveyed to plaintiff in conformity with that decree.

In cause No. 34349 plaintiff seeks by his action in assumpsit to recover for attorney and solicitor fees necessarily incurred by him in the preparation and prosecution of the suit for specific performance, and

also for like fees and expenses incurred in defending an ejectment suit brought by defendant against plaintiff, while the suit for specific performance was pending, this ejectment suit having been dismissed on motion of the attorney for plaintiff, John W. Keogh. Plaintiff's demand is for $5,250 on this claim, and it is not urged that the demand is unreasonable if he is entitled to recover any sum for such fees and expenses.

In cause No. 34350 on the same facts and upon a further showing that the loan value of the premises (which the court decreed should be conveyed) pending the litigation was $250,000, and that by reason of these suits plaintiff was deprived of this loan value use during the pendency of the suit, plaintiff seeks to recover damages to the amount of $1,875 for expense incurred necessarily in the payment of a premium to secure the release before maturity of a mortgage on other premises and further damages to the amount of $30,456.02 incurred in the payment of interest upon a mortgage placed upon said other premises.

It is urged in behalf of plaintiff that on the facts thus appearing, it was error for the court to direct verdicts for defendant and to enter judgment thereon.

II. We shall consider the demand for attorney's fees as set forth in cause No. 34349. This claim is based upon the 13th clause of the lease, which provides:

"The lessee further covenants and agrees to and with the lessor to pay all the expenses of the lessor; and the lessor, on his part covenants and agrees to and with the lessee to pay all the expenses of the lessee (including attorney's and solicitor's fees) paid or incurred by the lessee in any suit or legal proceeding to which he, without his fault, shall be party either plaintiff or defendant in his capacity as lessee in and under this lease."

Plaintiff also relies upon the 16th clause of the lease, which provides in part:

"It is mutually covenanted and agreed by and between the parties hereto that each and every of the expressions, phrases, terms, recitals, conditions, provisions, stipulations, admissions, rights, privileges, promises, agreements, requirements, covenants, and obligations contained and expressed in this lease shall at all times be construed as covenants running with the land and shall be held to apply to and shall bind or inure to the benefit of, as the case may require, not only the parties hereto, but each and every of the heirs, legal representatives and assigns of the party of the first part and each and every of the heirs."

The first question arising upon the record concerns the construction which should be given to these clauses of the lease. It is not contended that aside from these covenants any obligation on the part of the defendant to pay attorney's or solicitor's fees existed. The express language of the 13th clause of the lease limits the liability of the party obligated to pay such fees to such as may be "paid or incurred by the lessee in any suit or legal proceeding to which he, without his fault, shall be party either plaintiff or defendant *in his capacity as lessee in and under this lease.*" Defendant contends that when plaintiff gave notice of his election to purchase the demised premises he put off the relation of lessee to plaintiff and took on that of a purchaser or vendee; that the litigation which followed concerned the covenant of defendant to sell and of plaintiff to purchase and did not concern any covenant relating to the lease, strictly speaking. Defendant says that unquestionably the expression, "in his capacity as lessee in and under this lease," was intended by the parties to have some meaning and insists that the usual and ordinary meaning of these words should be given to them. He says that the

lessor did not covenant to pay all of the expenses and attorney's fees which might be incurred by Keogh but covenanted to pay only such expenses as Keogh might incur in his capacity. as lessee and for defendant's fault; that the instant the relationship of lessee and lessor ceased to exist the obligation to pay such expenses and attorney's fees also ceased; that the effect of the notice of February 21, 1922, was to relieve plaintiff from any and all obligation to pay further rent, and that plaintiff thereby ceased to be lessee and became purchaser with the right to demand the transfer of the property to him upon the payment of $10,-000; that all the expenses for which plaintiff sues were incurred subsequent to the service of the notice that plaintiff would purchase, and that at that time plaintiff was no longer lessee, and, as the Supreme Court held, defendant was not lessor.

The rule for which defendant contends seems to have been applied under similar circumstances in a number of well considered cases. Thus in *Powell v. Dayton, S. & G. R. R. Co.,* 16 Oregon 33, 16 Pac. 863, the Supreme Court of that State said:

"The exercise of the right to purchase during the term extinguishes the lease, and thus terminates the relation of landlord and tenant, and creates at once the relation of vendor and vendee. The effect is not simply to nullify the implied covenant to use the property in a tenant-like manner, leaving the lease in all other respects in full force and operation, but to blot out of existence the lease, with all its incidents, express or implied."

In *Master v. Roberts,* 244 Pa. 342, 90 Atl. 735, the court said:

"The general rule in such cases is that, where the relation of landlord and tenant exists under the terms of a written. lease, containing an option to purchase at a stipulated price, which option is properly exercised during the term, the relation of landlord and

tenant is thereby terminated, and thereafter the parties stand in the relation of vendor and vendee under the agreement. It follows that, if Master properly exercised his option to purchase, he stood in the relation of vendee under the agreement and from the time the contract became mutually binding upon both parties. After that time the relation of landlord and tenant ceased to exist, and the rights of the parties must be determined upon the basis of a contract to sell and convey on one side, and to purchase on the other.''

In *Behr v. Harwitz,* 90 N. J. Eq. 110, 105 Atl. 486, it appeared that a lease existed between the parties with an option to the lessee to purchase; that notice of the exercise of the option was given by the lessee and that for a period of about two months the lessee did not pay rent. The lessor claimed that the failure to pay rent was a violation of the terms of the lease which justified a refusal on his part to convey; but the court said:

''The position thus assumed is untenable. When the complainant declared his option by his notice in writing served on the defendants, a mutual contract was created binding upon the one to buy and the other to sell, thereby vesting the equitable title in the complainant; and thereafter it was beyond the power of the defendants, by wrongfully refusing for a period of almost two months (thereby being guilty of a breach of their covenant to convey) to compel the continuance of the relation of landlord and tenant, even after the bill was filed, for the purpose of creating a breach of the covenant to pay rent, thus enabling them to declare the option right forfeited.'' See also *Bakaitis v. Fink,* 340 Ill. 440.

The above cases are cited in defendant's brief. They are not discussed by plaintiff. Plaintiff, however, says that assuming the construction of the lease contended for by defendant is correct, the damages

for which plaintiff sues were incurred by him as lessee. Plaintiff says that his expenses for solicitor's fees were incurred as lessee because the relationship of lessor and lessee would continue, while matters preliminary were pending, up to the time of the consummation of the purchase by the payment of the price and execution of the deed. He says that while the suit for specific performance was pending he tendered rent and complied with other obligations imposed upon him by the lease; that defendant recognized the fact that he was considered a tenant by suing him for waste; that defendant then contended plaintiff was a lessee and it is now inconsistent for him to contend that plaintiff was a purchaser; that defendant wrongfully prevented plaintiff from becoming the purchaser; that it would now be unjust to permit him to take advantage of his own wrong by asserting that the damages and expenses were not incurred by plaintiff in his capacity as lessee. Plaintiff makes the rather technical distinction that he had not *exercised* his option but that he had only *elected* to exercise it. He says that the lease was not terminated until the execution and delivery of the deed.

The expenses incurred, for which plaintiff sues, do not in any wise concern the lease as a lease. These expenses were incurred in enforcing the provision concerning the agreement to sell upon the exercise of plaintiff's option. The writing was severable. The notice of February 21, 1922, stated that plaintiff "has elected and does hereby elect to purchase from you as lessor said premises at the agreed price of $10,000." The same notice fixed April 29, 1922, as the date for the consummation of the purchase. The expenses for which plaintiff sues were not incurred until after that date. Plaintiff did not sue or incur the expenses which he seeks to recover in his "*capacity*" as lessee. He sued as a vendee to compel the conveyance of the premises to him. The construction for which plaintiff

contends would render the limiting phrase "in his capacity as lessee" entirely meaningless. We are of the opinion that even if plaintiff was the original lessee and defendant the original lessor, plaintiff could not recover.

While it is true that defendant refused to convey and resisted the proceedings brought to compel him to do so, the final judgment of the Supreme Court settled the point contrary to the contention of defendant and in favor of the contention of plaintiff. In other words, the Supreme Court decided that defendant was obligated to convey at plaintiff's election. That suit was in equity, and under the well known maxim of equity the thing which ought to be done would be regarded as having been done. Defendant therefore after his wrongful refusal to convey on April 29, 1922, could no longer be regarded as the owner nor plaintiff as his lessee; but on the contrary plaintiff would from that date be regarded as the true owner of the property. It is not suggested, as we understand it, that plaintiff continued to pay rent after that date, or that he was obligated to do so. That obligation was essential to the relationship of landlord and tenant or of lessor and lessee.

III. There remains for consideration another controlling question, namely, whether the 13th clause of the lease, by which the parties covenanted as to attorney's fees, is or is not a covenant running with the land. Defendant is not the original lessor. He did not take his title directly as assignee of the original lessor. His right in and to the premises is derived from a quitclaim deed executed by Comfort E. Peck on December 6, 1911—ten years after the lease was executed. There is no claim that either in that deed or by any other document did defendant specifically assume the burden of complying with any of the covenants of the lease. It is apparent that conceding that the original lessor is liable under this clause of the

lease, it by no means follows that defendant, personally a stranger to the covenant, is liable thereunder.

As already stated, however, plaintiff contends that the covenant expressed in this 13th paragraph runs with the land because of the provision contained in the 16th paragraph to the effect that all of the agreements, stipulations and covenants contained in the lease should be construed as covenants running with the land and be binding upon or inured to the benefit of the parties, their respective heirs and assigns. The intention of the parties to the lease is not controlling. The general rule is as stated in 15 Corpus Juris 1245:

"No agreement between the parties, however strongly expressed, can cause a covenant to be attached to the land if it is not of such a nature that the law permits it to be attached, although such an agreement may create a lien upon the land as against a subsequent purchaser with notice notwithstanding it will not bind such purchaser personally."

And such is the holding of the courts of this State, as in *Gibson v. Holden*, 115 Ill. 199, where our Supreme Court said:

"Moreover, where the covenant is not of a nature that the law permits it to be attached to the estate as a covenant running with the land, it cannot be made such by agreement of the parties."

The court cited with approval *Masury v. Southworth*, 9 Ohio St. 340, which held:

"If the covenant cannot, or does not run, with the land, no words of assignment can create a privity of estate; if a privity of estate be created, no words of assignment are necessary."

In *Rubel Bros. v. Dumont Coal & Ice Co.*, 182 N. Y. S. 204, the court said:

"That which is essentially a personal contract cannot be made into either an easement or a covenant

running with the land by a stipulation between the parties to the contract that it shall be an easement or covenant running with the land." Citing *Harsha v. Reid,* 45 N. Y. 415, and *Pierce v. Keator,* 70 N. Y. 419. See also *Wilmurt v. McGrane,* 45 N. Y. S. 32; *Hurxthal v. St. Lawrence Boom & Lumber Co.,* 53 W. Va. 87, 44 S. E. 520, and *Geiszler v. DeGraaf,* 166 N. Y. 339, 59 N. E. 993, and a note to said cause in 82 A. L. R. 664.

It would therefore appear that the clause of the lease upon which plaintiff relies cannot be construed as one running with the land because of the express declaration of the parties alone. The necessary qualities of such a covenant must also appear. Is the covenant for the payment of solicitor's fees and expenses incurred in litigation concerning the land a covenant running with it? That seems to be the ultimate question here. The leading case as to when a covenant will or will not run with the land is *Spencer's* Case, 5 Coke 16, 1 Smith's Leading Cases 174, where it was said:

". . . When the covenant extends to a thing *in esse,* parcel of the demise, the thing to be done by force of the covenant is *quodam modo* annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee (a), although he be not bound by express words; . . . But although the covenant be for him and his assigns, yet if the thing to be done be *merely collateral* to the land, and doth not touch or concern the thing demised in any sort, there the assignee shall not be charged. . . ."

In *Norcross v. James,* 140 Mass. 188, Mr. Justice Holmes, after a consideration of the ancient authorities, including Bracton, Fleta and the Year Books, states:

"The discussion of the question under what circumstances a landowner is entitled to rights created by

way of covenant with a former owner of the land, has been much confused since the time of Lord Coke, by neglecting a distinction, which he stated with perfect clearness, between those rights which run only with the *estate in the land* and those which are said to be *attached to the land itself:* 'So note a diversity between a use or warranty and the like things annexed to the estate of the land in privity, and commons, advowsons, and other hereditaments annexed to the possession of the land.' Chudleigh's Case, 1 Coke, 122 b; S. C. nom. *Dillon v. Fraine,* Poph. 70, 71.''

In *Dorsey v. St. Louis A. & T. H. R. R. Co.,* 58 Ill. 65, Dorsey sold to a certain railroad company a considerable strip of land, in consideration of which the company agreed to construct and maintain a good and suitable fence upon each side of the railroad, on the lines and bounds of the land, with proper cattle guards, etc., and also to construct a depot on the lands. This railroad company thereafter conveyed its road, franchises and appurtenances to another railroad company, which refused to comply with the covenants, and Dorsey sued. The trial court sustained a demurrer to the declaration, which judgment was reversed although the agreement did not purport to bind anyone other than the parties thereto. The court said that a covenant was said to run with the land when the liability to perform it, or the right to enforce it, passed to the assignee of the reversion; that the covenant of warranty had its origin in the common law from the feudal system which imposed upon grantee the duty of tenure and bound the lord to the reciprocal obligation of protecting his tenant, a liability which descended to the heir as long as he had the lands of his ancestor to answer for it; that the word of feoffment, ''dedi'' implied a warranty, and that if a warranty be made to one, his heirs and assigns, by express words, the assignee should have the benefit of the covenant and should have *warrantia charta.* The

same opinion, however, pointed out that if the thing to be done was merely collateral to the land and did not touch or concern the premises demised, the assignee should not be charged, for instance, if the lessee should covenant to build a house on land of the lessor other than the demised premises.

In *Graves v. Toledo P. & W. Ry. Co.*, 202 Ill. App. 478, the railroad company granted to an individual the right to build a grain elevator upon its right of way, and certain terms of the lease were that the defendant should not be liable for any damage caused by fire resulting from the operation of its railroad. The lessee transferred to one Roberts, and the building was thereafter destroyed as alleged by reason of fire caused by sparks emitted by defendant's locomotive. It was held that the owner, although not a party to the lease, was bound by the covenant and could not recover.

In *Wiggins Ferry Co. v. Ohio & M. Ry. Co.*, 94 Ill. 83, it appears that the Ferry Co. made a deed to the railroad company which conveyed no land but only the right to construct, maintain and use upon and over certain lands such railroad tracks, depots, warehouses, etc., as the company should find necessary or convenient in transacting its business and to keep the property of the railroad company thereon, this land being distinct property from the ferry franchise, in consideration of which the railroad company covenanted with the ferry company always to employ the latter to transport over the Mississippi river all property and persons which might be taken across the river, either way, by the railroad company. It was held that since the covenant was for the benefit of the owners of the ferry and not of the owners of the land, out of which the easement was granted, the ferry company could not maintain an action at law for a breach of the covenant against a party who succeeded to the rights, property and franchises of the railroad com-

pany. The court said that it was not shown that the two parcels of land in which the easement was granted were any part of the ferry; that for aught that appeared the properties were totally distinct and independent of each other. The court further said:

"Following this form of expression, the easement here granted is in the two parcels of land, not in the ferry, while the covenant relates to and affects the ferry only. Undoubtedly the covenant enhances the value of the ferry, or renders it more beneficial, but this has nothing to do with the two parcels of land in which the easement is granted."

In *Brockmeyer v. Sanitary District of Chicago,* 118 Ill. App. 49, the court said:

"A covenant which may run with the land must have relation to the interest or estate granted, and that the act to be done must concern the interest created or conveyed."

In *Fitch v. Johnson,* 104 Ill. 111, it was decided that by the weight of authority the doctrine that covenants run with incorporeal as well as corporeal hereditaments was fully established, and that where the owner of certain premises conveyed a part of them, covenanting that the purchaser, his heirs and assigns should enjoy certain permanent rights in and with respect to the premises retained by the grantor, and also covenanting in the conveyance to do and perform from time to time certain acts which were essential to the use and enjoyment of the purchased premises, such covenant, although regarded as a burden, would be deemed to run with the servient estate and to subject the assignee thereof to its performance.

In *Gibson v. Holden,* 115 Ill. 199, there was an agreement between two adjoining owners with reference to a party wall to the effect that half of the cost of the construction of the party wall should be paid by the adjoining owner, and the court held that the assignee

would be no more benefited by receiving this money than by receiving money from any other source or on any other acount; that in order to benefit him as a landowner, it must in some way affect the value or use of the land. It was held that the covenant did not in that case run with the land but was purely a contract or covenant.

In *Louisville & Nashville R. R. Co. v. Illinois Cent. R. Co.,* 174 Ill. 448, it was held that covenants running with the land were applicable to incorporeal as well as corporeal hereditaments.

In *Purvis v. Schuman,* 273 Ill. 286, the court said:

"If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership; but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or estate conveyed."

In *Keogh v. Peck,* 316 Ill. 318, it was said:

"An option agreement, contained in a lease, to purchase the leasehold premises *concerns the land and the estate conveyed* by the lease and the mode of the enjoyment of the demised premises."

Plaintiff says: "The option clause in the lease has been held to be a covenant running with the land. The covenant as to the payment of attorney's fees and expenses is so closely related to the option agreement and so tied up with this known covenant running with the land that to be consistent it should be held that the covenant as to the payment of attorney's fees is binding upon the defendant, Peck. The purpose of the covenants sued upon was, among other things, to make the enforcement of the option clause an inexpensive proceeding and thus make the option more valuable. It is part and parcel thereof. If the option clause is a covenant running with the land, then so is the other."

The distinction between the option clause and the agreement to pay solicitor's fees in connection with the enforcement of it would seem to be clear and distinct. The option covenant immediately concerns the land and the title to it, placing upon the holder of the title, whoever he may be, the duty to convey a fee simple upon the exercise of the option. In other words, it creates in equity an estate upon condition. The covenant to pay solicitor's fees and other expenses, etc., is only collateral. It in no way concerns the land, the improvements on the land, the title to the land, nor the quality or character of either. It is not "annexed to the estate of the land in privity." It does not purport to create any estate in the land at all. It does not create an easement or other hereditament, either corporeal or incorporeal, which might be annexed to the possession of the land. It does not concern any estate of any nature in the land at all. The covenant is purely personal in its nature and brings into existence no estate or interest in the land which renders it capable of attachment thereto. It creates no privity of estate and as to defendant there is no privity of contract.

IV. Defendant has raised the further point that the claim which plaintiff now seeks to enforce has become *res adjudicata* by reason of the decree in the bill for specific performance. In view of what we have already said, it will be unnecessary to discuss this supposed defense. It was not set up by plea, and we think it doubtful whether evidence of a former adjudication would be admissible under the general issue. 34 Corp. Jur. 1055. It would not be admissible in equity in this state unless pleaded. *Williams v. Williams*, 265 Ill. 64; *Bakaitis v. Fink*, 340 Ill. 440.

For the reasons indicated the judgment is affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.