Newhard Estate.

Argued December 12, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Eugene K. Twining,* with him *David Getz* and *Iobst and Getz,* for appellant.

*Calvin F. Smith,* for appellee.

OPINION BY HIRT, J., January 18, 1946:

On exception of H. S. Shafer to the executors' account in this estate, damages, measured by the terms of a lease of a farm which had been terminated on sale of the land, were awarded to him as former lessee in the sum of $1,200. The award was made notwithstanding Shafer was not disturbed in the actual possession of the land by the sale. A residuary legatee appealed.

Shafer's business is growing, dehydrating, and otherwise processing alfalfa. For these purposes he leased 91 acres of a farm then owned by H. E. and Minnie R. Newhard, husband and wife, for a term of 10 years beginning April 1, 1940, at an annual rental of $5 for each acre adaptable to alfalfa culture. H. E. Newhard died in 1940; Minnie, his wife, surviving owner and lessor, died on October 7, 1943. At a public sale of the farm by her executors on February 26, 1944, H. S. Shafer was the highest and best bidder, and the farm, including all of the land covered by the prior lease, was sold to him for $10,800. At the time of settlement he claimed damages under the terms of his lease; relying on an agreement between him and the executors that his claim would be adjudicated on the audit of the executors' account he paid his bid in full and received the executors' deed as purchaser of the farm.

Shafer's lease provided: "The Lessor further excepts and reserves thereout, the full and free right and liberty of entry and re-entry, and of ingress and regress in, upon, or to take possession of any tract or part of tracts. Provided, however, that in such event the Lessor agrees to reimburse said Lessee for any and all damage to crops, the Lessee may have in the ground at such times, which reimbursement shall not at any time exceed the amount of . . . $16.00 per acre, or fraction thereof, on a pro-rata basis for the first years crop and . . . $12.00 per acre for the second years crop and . . . $5.00 per acre for the Third years crop, seasons to be counted from the year after seeding is seeded." Alfalfa is a perennial crop with a productive life of 3 or 4 years. In 1943 Shafer reseeded 75 acres of the farm to alfalfa and the award was computed on the 1944 crop, the first cutting season after reseeding, at $16 per acre. Damages, computed at that rate under the lease, were less than his cost of planting. Under the terms and conditions of the sale, applicable to all bidders, upon which Shafer bought the farm, we think the lower court was right in directing the

payment of damages to him measured by the above provision of his lease. There is no dispute as to any facts.

Printed bills advertising the public sale by the executors, under the heading "Conditions of the present sale", provided: "The purchaser shall have proper conveyance . . . *and possession will be given on the completion of the purchase.*" (Emphasis ours.) And immediately before bids were invited at the public sale, the attorney conducting the sale for the executors (on unquestioned authority) read the terms and conditions of the sale so set forth in the hand bill and in interpretation of them announced that the property had been leased to Shafer "but the purchaser does not have to worry about the title or possession by the first of April [1944]; it is up to us, the executors to clear the title and give possession." In a memorandum entered into by the executors with Shafer, written on a copy of the sale bill, on receipt of 10% of the purchase price paid by Shafer when the property was knocked down to him, it was agreed: ". . . that the above written conditions of sale shall be taken and considered as the terms of agreement for the said sale and purchase respectively, and to be observed and fulfilled by them . . . respectively, in all things."

It is certain that the executors intended a sale of the farm freed from the encumbrance of the lease, and clear and unambiguous prior notice of that intent was given to all prospective purchasers. All bids were made on the understanding that the lease with Shafer would be terminated by the sale and the successful bidder would receive title to the land and to the growing alfalfa crops as well; that the executors had, in effect, intended to exercise the lessor's right of re-entry and that Shafer's damages, from their election to vacate the lease, would be borne by the estate. If anyone else had been the successful bidder there could be no question that the executors would have been obliged to pay Shafer $1,200. And the fact that he was the buyer does not affect the executors' obligation to him in that amount. All bids

were on the same terms and Shafer was in competition with all other bidders. It is idle to say that he must accept less than another successful purchaser would have received. Others were bidding on the alfalfa planting, as well as on the land, and Shafer was obliged to outbid them on both counts to re-acquire the beneficial enjoyment of the premises. It is unimportant that Shafer continued to possess the land after the sale without interruption, for his possession before and his possession after the sale were not in the same right. His right of possession under the lease terminated with the sale of the land, under the terms imposed by the executors and not by merger; thereafter he possessed the land solely in the new role of purchaser. Cf. *Master v. Roberts*, 244 Pa. 342, 90 A. 735.

Under the circumstances, the estate is liable. The option exercised by the executors to terminate the lease, evidenced by the conditions of the public sale, estopped them, as well as the residuary legatee appellant, from denying liability to Shafer regardless of the fact that he was the successful bidder.

Decree affirmed at the costs of the estate.