## R. Whitson Carter, Ltd. v. Mored, Inc.

*Alan I. Baskin,* for plaintiff.
*David M. Kozloff,* for defendant.

SCHAEFFER, *J.*, April 19, 1979—This action in equity was instituted by plaintiff against defendant to require defendant to convey certain premises in

the Borough of Wyomissing, Berks County, Pennsylvania, to plaintiff. Plaintiff, defendant's lessee, claims that its lease with defendant contains an option to purchase the real estate in question, that it exercised that option, and that defendant, nevertheless, has refused to convey in accordance with the option contract.

The issues in the case are whether plaintiff had a valid option at the time it attempted to exercise it, whether it properly exercised the option, whether plaintiff is entitled to specific performance of the option, and whether defendant is now entitled to rent for the entire term of the lease. After a hearing, we make the following findings of fact, discuss the questions of law involved, and enter a decree nisi.

• • •

## DISCUSSION

The Reading Motor Inn is a well known motel-restaurant in the Reading area, and R. J. Willoughby's is a popular eating and watering place immediately adjacent to the Motor Inn. Prior to January 30, 1976, Beajamac Corp. owned both properties. Willoughby patrons used a large paved parking area adjacent to the Willoughby building. Although to the eye this parking area appeared to be one single and undivided tract of land, in reality an invisible boundary line crossed the area and bisected it into two separate tracts. So long as Beajamac owned both tracts, no problems could arise. When Beajamac conveyed the Willoughby tract to plaintiff in January 30, 1976, Beajamac desired to convey the entire parking area to plaintiff and plaintiff desired to accept and receive it. However, the Reading Motor Inn tract was at that time encumbered and Beajamac could not convey a clear title to plaintiff for that portion of the parking

area on the Motor Inn tract. Beajamac and plaintiff, therefore, agreed upon the expedient of a lease to plaintiff with an option to buy. To carry out this agreement, the lease agreement, which is Exhibit No. 1 in these proceedings, was executed and delivered.

Plaintiff paid its rent under the lease sporadically until December, 1977, when plaintiff learned from Beajamac that Beajamac was in the process of selling the Reading Motor Inn tract to defendant. Plaintiff, thereupon, paid up all rent that was then in arrears and paid the rent for January, 1978, on January 12, 1978. Neither Beajamac nor defendant formally notified plaintiff that the sale had been consummated and settlement held thereon, although plaintiff was aware of these events by late March, 1978.

Plaintiff paid its February rent in February, its March rent in April and had not paid its April and May rent as of June 9, 1978.

On June 9, 1978, plaintiff attempted to exercise its option to buy the parking area. Defendant refused to convey, arguing: (1) the option had expired as by its terms it had to be exercised at the time Beajamac sold its stock or its assets, or within a reasonable time thereafter, and this time had passed; (2) the lease had terminated because of plaintiff's default in payment of rent; and (3) plaintiff did not properly exercise the option.

The lease agreement did not provide for payment of rent in advance. Therefore, payment of the monthly rent was due immediately after the end of the month, that is, the January rent was due and could be timely paid on February 1, the February rent was due and could be timely paid on March 1, and so on: Menough's Appeal, 5 W. & S. 432 (1843); Gilmore v. Dwyer, 53 D. & C. 428 (1945). In the

case at bar, plaintiff had not paid its rent installments for March through November 1977 as of December 1, 1977, paid them all and the December rent installment in December 1977, paid its January and February payments in a timely fashion, was late in making its March payment, and had not made its April and May payments as of June 9, 1978.

Plaintiff did not pay the rent installments when due or within five days thereafter. The lease agreement specifically provided for such a situation in the following words:

"And if default shall be made in the payment of any part of said rent for five days after the same became due . . . the first party [Beajamac and by assignment defendant] *may forfeit* and annul the unexpired portion of this lease, or any renewal thereof, and enter upon and repossess the said premises without process of law and without any notice whatsoever, and without making demand for payment of rent in arrear." (Emphasis supplied.)

Therefore, plaintiff on June 9, 1978, was in default under the terms of the lease. However, the lease does not provide for an automatic forfeiture upon default, and defendant at no time prior to Mr. Baskin's telephone call on June 9, 1978, took action to terminate the lease. Therefore, the lease had not terminated as of that time: English v. Yates, 205 Pa. 106, 54 Atl. 503 (1903).

Under Pennsylvania law, an option provision in a lease is not an essential covenant of the lease, nor is it a term or condition of the demise. This is true whether the consideration for the option was independent from the consideration for the lease or was

the same as the consideration for the lease: Pettit v. Tourison, 283 Pa. 529, 129 Atl. 587 (1925). Therefore, plaintiff's default in performance of one of the covenants in the lease (in the case at bar, the punctual payment of the rent installments) does not terminate the option, particularly where, as here, the lease itself has not been terminated because of the default: Paul v. Snyder, 66 D. & C. 2d 463 (1974); Owens Illinois, Inc. v. Lake Shore Land Co. Inc., 457 F. Supp. 896 (W. D. Pa. 1978).

The option not having terminated, we next consider its extent and effect. The language of the option provision in question is that in the event of a sale of Beajamac's stock or assets, plaintiff "is granted an option to purchase. . . ." The option, therefore, was subject to a condition precedent, which was fulfilled when Beajamac sold its assets, including the Reading Motor Inn tract, to defendant on January 30, 1978. Upon the happening of this event, the option was granted—came into effect—and, thereafter, plaintiff had an absolute right to purchase the parking area. We reject defendant's contention that plaintiff had to exercise the option at or before the conveyance of the Reading Motor Inn to defendant, or at least within a reasonable time thereafter and that a reasonable time had passed before June 9, 1978. The option provision says nothing of an obligation to exercise the option before the sale. To the contrary, the language is clear that plaintiff did not have an option before the happening of the condition precedent and therefore could not have exercised the option before the sale. Nor is there any language that plaintiff had to exercise the option as of the time of the conveyance to defendant.

The very word "grant" connotes the creation of a property right which has an existence beyond the moment that it is granted.

The argument that plaintiff had to, but did not, exercise its option within a reasonable time is also not persuasive. In the first place, when an option is granted as a provision in a lease for a definite term, the lessee may exercise the option at any time during the term unless the language used provides otherwise: Detwiler v. Capone, 357 Pa. 495, 55 A. 2d 380 (1947). Nothing in the option provides otherwise. Therefore, plaintiff could have exercised the option at any time during the term after January 30, 1978, and was not required to act within a "reasonable time" after the sale of Beajamac's assets.

In the second place, under the facts of this case, plaintiff did exercise its option within a reasonable time. What is a reasonable time depends upon circumstances. Here neither Beajamac nor defendant notified plaintiff of the sale. Plaintiff learned of the sale by happenstance and did not have definitive information that the sale had taken place until late March 1978. So far as plaintiff is concerned, a reasonable time could not begin to run until it knew of the sale, that is until late March 1978. The period from late March 1978 until June 9, 1978, is, therefore, the time span we must consider, and we find it to be well within the limits of what constitutes a reasonable time on the facts of this case.

Thus, the option was valid, in effect, and exercisable at the time Mr. Baskin made his telephone call.

We further hold that Mr. Baskin validly exercised the option on June 9, 1978, when he made his telephone call. A lessee under a written lease contain-

ing an option to purchase land may exercise the option by giving oral notice, so long as he has manifested an intent to exercise it: Smith & Fleck's Appeal, 69 Pa. 474 (1872); Detwiler v. Capone, supra. Mr. Baskin manifested such intent. The option having been exercised on June 9, 1978, the lease merged into the exercised option, now an agreement for sale and purchase: Phillips v. Tetzner, 357 Pa. 43, 53 A. 2d 129 (1947); Master v. Roberts, 244 Pa. 342, 90 Atl. 735 (1914).

That agreement is specifically enforceable. Plaintiff was not required to tender performance to defendant because Mr. Harenza clearly stated by word and letter that defendant did not intend to honor the option clause and convey in accordance with its provisions. Therefore, defendant must convey the premises in question to plaintiff.

Although the lease had not terminated on June 9, 1978, prior to Mr. Baskin's telephone call, plaintiff at that time, as we have seen, had been, and was, in default in the payment of the rent installments. The lease further provided in such case as follows: "If default shall be made in the payment of any rent when the same shall become due, . . . then the rent for the balance of the term shall at once become due and payable, as if by the terms of the lease it were all payable in advance." Similar clauses have long been held valid and effective in Pennsylvania and an almost identical clause to the clause before us was upheld in Peirce v. Hoffstot, 211 Pa. Superior Ct. 380, 236 A. 2d 828 (1967).

However, in spite of its language, the clause is not self-executing. The lessor must take action to secure and collect the rent for the entire term. The acceleration clause is for the protection of the lessor

and the lessor can bring it into play or not as he choses: Moretti v. Zanfino, 127 Pa. Superior Ct. 286, 193 Atl. 106 (1937).

In the case at bar, defendant took no action to take advantage of the acceleration clause even though plaintiff had been in default, and continued in default, at and after Beajamac's assignment of the lease to defendant.

Defendant having taken no action to collect the rent for the entire term, plaintiff continued under an obligation to pay its rent in monthly installments immediately after each month of the term. Thus, the April rent was due May 1, the May rent June 1, and the June rent would have fallen due on July 1.

Defendant is entitled to rent only up to the time the option was exercised, that is, up to June 9, 1978. As of that time, the lease terminated. A tenant is not liable for rent after termination, even though prior to termination the lessee had been in default, even though the lease contained an acceleration clause and even though the lessor had taken advantage of the acceleration clause and taken action to collect the rent for the entire term: Peirce v. Hoffstot, supra. By the same reasoning, a tenant in default is not liable for rent after termination where the lessor has not proceeded to take action under an acceleration clause.

Plaintiff is not liable to defendant for the June rent, or any part thereof, because it would have fallen due on July 1. Rent cannot be apportioned but follows the reversion: Johnston v. Smith, 3 P. & W. 496, 24 Am. Dec. 339 (1832); Young v. Jones, 1 Lehigh 175 (C. P. of Northampton Co., Pa., 1885). Plaintiff, having exercised its option on June 9, 1978, was entitled to the reversion on July 1, 1978.

Plaintiff tendered the April and May rent to defendant by check on June 14, 1978. Defendant made no objection to the tender because it was in the form of a check. Indeed, here the practice of the parties had been to pay and receive the rent by check. While the common law rule was that a tender of payment must be made in "legal tender," that is, in cash, to stop the running of interest, tender by check is a valid tender today, if no objection is made to its form: Pershing v. Feinberg, 203 Pa. 144, 52 Atl. 22 (1902). Businessmen pay their bills by check and other businessmen receive, and expect to receive payment by check. Payment in cash for such items as rent due would be bulky, tedious and contrary to business and financial practice and expectations. We, therefore, hold that where, as here, the lessee tenders payment of rent to a lessor by check, and the lessor makes no objection to the tender being in the form of a check, such tender stops the running of interest on the debt.

In the present case, plaintiff did not tender the rent with interest to and including June 9, 1978. Normally, the failure to include interest in the tender defeats the tender and does not stop the running of interest on the whole debt. Where, as here, however, the interest is small and inconsequential ($2.28 on the April rent and $.53 on the May rent), the failure to include interest in the amount tendered will not defeat the tender: Milligan v. Marshall, 38 Pa. Superior Ct. 60 (1909). This result is strengthened in the case at bar by the fact that defendant and its assignor in their prior dealings with plaintiff did not demand or receive interest on overdue rent.

One more issue remains to be resolved. Plaintiff was at all times in possession of the parking area and did not appropriate the purchase money to the

contract. Accordingly defendant is entitled to interest at the legal rate of 6 percent per annum from the time settlement should have been held after the exercise of the option until the actual time of settlement: Sladkin v. Greene, 359 Pa. 528, 59 A. 2d 105 (1948). When the agreement, as here, does not provide a specific time for settlement, settlement is to be held within a reasonable time. We hold that under the circumstances of this case a reasonable time passed, 60 days after plaintiff's exercise of its option, that is, on August 8, 1978. Therefore, defendant is entitled to interest at 6 percent per annum upon the purchase price from and after August 8, 1978.

Accordingly, we make the following conclusions of law and enter the following decree nisi.

• • •

## DECREE

And now, April 19, 1979, it is ordered, adjudged and decreed as follows:

(1) That defendant, Mored, Inc., execute and deliver a valid deed conveying the parking area used by Willoughby's, which is a part of the Reading Motor Inn tract, as said parking area is defined and described in the lease agreement, which is Exhibit No. 1 in these proceedings, to plaintiff;

(2) That plaintiff pay to defendant the purchase price for said parking area, said purchase price to be calculated as provided in said lease agreement, together with interest on said purchase price at 6 percent per annum from August 8, 1978;

(3) That plaintiff pay to defendant the sum of $350 for due and unpaid rent for April 1978, with interest at 6 percent per annum thereon from May 1, 1978, to June 14, 1978;

(4) That plaintiff pay to defendant the sum of $350 for due and unpaid rent for May 1978, with interest at 6 percent per annum thereon from June 1, 1978, to June 14, 1978;

(5) That the provisions of this decree shall be fully carried out and performed within 30 days from and after the service of this decree upon the parties; and

(6) That defendant shall pay the costs of these proceedings.

The prothonotary shall serve notice upon the parties or their counsel of record of the entry of this decree nisi, and if no exceptions are filed within 20 days after such service, the decree shall become absolute as of course and the prothonotary shall enter the same as the final decree in this matter.